[Sac. No. 6879.   In Bank.   Mar. 13, 1959.]

GOUGH INDUSTRIES, INC. (a Corporation), Respondent,
v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, James E. Sabine, Assistant Attorney General and Ernest P. Goodman, Deputy Attorney General, for Appellant.

Pillsbury, Madison & Sutro, Sigvald Nielson, Francis N. Marshall, Noble K. Gregory and Robert F. Miller for Respondent.

McCOMB, J.—Defendant appeals from a judgment awarding plaintiff a refund of sales tax and interest paid under protest.

*Facts*: Plaintiff is a California manufacturer and seller of electrical products. During 1949 plaintiff sold goods to Arabian American Oil Company and Trans-Arabian Pipe Line Company for use in Saudi Arabia. The purchasers requested price quotations from plaintiff and other suppliers. Bidders were informed that all purchases were made strictly for direct export to scenes of operations in foreign countries and that it was anticipated bidders' quotations would show export prices or export discounts applicable. They were also informed that landing and receiving conditions in Saudi Arabia were such that specialized packing was required and that if they could not fulfill these specialized packing requirements with their own facilities, they should so indicate on their quotations.

Plaintiff quoted prices for delivery of the goods to an export packer's plant. The purchasers then submitted an export purchase order requiring that the packages be marked with the name of the port of entry in Saudi Arabia. The purchase order showed that ocean transportation had been arranged for and that proof of export would be furnished. It also showed a required date of export and a special export number and contained the following condition: ''The property hereunder is for export and is to be delivered by you directly to a carrier or a forwarding agent for shipment to a point outside the United States, in accordance with shipping instructions hereafter to be furnished you.''

Plaintiff was then instructed to deliver the goods to ''Trans-Arabian Pipeline Co., Saudi Arabia, c/o Foreign Trade Export Pack. Co., 445 Figueroa St., Wilmington, Calif. for export packing and forwarding.'' Plaintiff shipped the goods by truck carrier to the packer. Title passed at the time the

goods were delivered to the packer. The packer packed and crated the goods according to the purchaser's specifications and forwarded them by truck carrier to the ocean carrier, which transported them to Saudi Arabia.

As will hereinafter appear, if at the time title passed to the purchaser the goods were goods in export, the proceeds of the sales were not properly includable in plaintiff's retail sales in the determination of the amount of sales tax assessable against it by the State of California. On the other hand, if at the time title passed the goods were not goods in export, such proceeds were properly includable in plaintiff's retail sales.

■ The question for us to determine, therefore, is: *Had a continuous export journey begun at, or prior to, the time the goods were delivered to the packer?*

*Yes.* The export journey began when plaintiff delivered the goods to the truck carrier at its plant. The stipulated evidence, all the inferences therefrom, and the findings of the trial court establish the continuous and unbroken character of the journey. Therefore, the goods were goods in export at the time title thereto passed, and the transaction was not subject to the state sales tax.

Article I, section 10, clause 2, of the United States Constitution reads as follows: "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspections Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."

*Richfield Oil Corp.* v. *State Board of Equalization,* 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80], involved the sale of oil in California to a foreign government, title having passed in this state. The Supreme Court of the United States held that the imposition of a California sales tax on the transaction was unconstitutional under the import-export clause of the United States Constitution set forth above and indicated that the important factor was that at the time of the delivery certainty of the foreign destination was plain.

In *Matson Nav. Co.* v. *State Board of Equalization,* 136 Cal. App.2d 577 [289 P.2d 73] (hearing denied by the Supreme Court), the same conclusion was reached relative to the imposition of a California sales tax on the sale of a steamer sold

by the Matson Company to a Panamanian corporation, title having passed in this state.

In *A. G. Spalding & Bros.* v. *Edwards*, 262 U.S. 66 [43 S.Ct. 485, 67 L.Ed. 865], a Venezuelan firm ordered a New York commission house to buy a quantity of bats and balls for its account. The commission house placed the order with the manufacturer, instructing it to deliver the packages to an exporting carrier in New York for shipment to Venezuela. Title passed when the goods were delivered to the carrier. The Supreme Court held that at that time the goods had been committed to export and that the tax was therefore invalid under article I, section 9, clause 5, of the Constitution, which prohibits Congress from taxing exports.*

■ From the foregoing authorities, it appears that where an article is manufactured and sold in one of the states for export to a foreign country, it is free from state sales tax under the import-export clause of the United States Constitution if at the time title passed the certainty of the foreign destination was plain.

In the present case all the contract documents specified the exportation, and all steps in the transportation were carried out without deviation.

The trial court specifically found that the export journey started when the goods left plaintiff's plant in Los Angeles; that it was a continuous journey from Los Angeles to Saudi Arabia; that there was no stoppage in *transitu* or attempt to cause one, or any delay for an unreasonable length of time; that any delay (if any there were) did not break the continuous stream of foreign commerce; and that all packing and crating by the export packer "was an incidental part of the total export journey rather than the primary station of commencing an export journey to Saudi Arabia."

■ From the foregoing, it appears that: (a) the agreement of sale contemplated shipment of the goods in export, that is, from a seller in the United States to a buyer in a foreign country; (b) from the beginning of the transaction, the goods were committed to go all the way to the foreign country; (c) the movement of the goods had actually started when the tax was sought to be imposed; and (d) the journey was continuous and unbroken by any action or delay taken for a purpose independent of the transportation of the goods.

---

*"Export" has the same meaning under both section 9 and section 10, article I, of the federal Constitution.

Therefore, it is immaterial that the goods were shipped to the packer in Wilmington and there packed for ocean travel, such being incidental and necessary for the safe transportation of the goods (*Southern Pac. Terminal Co.* v. *Interstate Commerce Com.*, 219 U.S. 498, 526-527 [31 S.Ct. 279, 55 L.Ed. 310]), or that there was a change in the form of transportation from overland travel by truck to overseas travel by ship, with incidental preparation for the latter (*Hughes Bros. Timber Co.* v. *Minnesota*, 272 U.S. 469, 474 [47 S.Ct. 170, 71 L.Ed. 359]; *Southern Pac. Terminal Co.* v. *Interstate Commerce Com., supra*).

*Empresa Siderurgica* v. *Merced Co.*, 337 U.S. 154 [69 S.Ct. 995, 93 L.Ed. 1276], relied on by defendant, is not applicable to the facts in the instant case. In that case a property tax against the purchaser on various parts of a cement plant which had been sold and dismantled for shipping to South America was upheld on (1) parts that were crated and ready for shipment, (2) parts dismantled but not yet packed ,and (3) parts not yet dismantled. No tax was levied on parts that had already been shipped.

The fundamental difference between the Empresa case and the present one is this: In the Empresa case, the movement of the goods sought to be taxed had not started when the tax was imposed, while in the present case the movement of the goods had started on a continuous journey in foreign commerce from Los Angeles to Saudi Arabia when the tax was imposed.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and White, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.