[Civ. No. 27502.    Second Dist., Div. One.    June 3, 1964.]

UNION OIL COMPANY OF CALIFORNIA, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, for Defendant and Appellant.

Hill, Farrer & Burrill, Carl A. Stutsman, Jr., Vincent C. Page and Jack R. White for Plaintiff and Respondent.

FOURT, J.—This is an appeal by defendant City of Los Angeles (hereinafter referred to as "City") from a judgment entered in favor of plaintiff Union Oil Company of California (hereinafter referred to as "Union") in an action for the recovery of business license taxes collected by City for the license years 1954 through 1958 inclusive.[1]

The cause was submitted to the trial court on an agreed statement of facts. The facts are as follows:

"1. Plaintiff is now, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of California.

"2. Defendant is now and at all times herein mentioned was a municipal corporation existing under and by virtue of the laws of the State of California, being a chartered city located in the County of Los Angeles, State of California.

"3. At all times herein mentioned, Plaintiff was and now is engaged in the business of manufacturing and selling at wholesale and at retail petroleum products within and outside the City of Los Angeles.

"4. On the dates hereinbelow set forth, Plaintiff, in ac-

---

[1]The judgment provides in pertinent part as follows: "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff have judgment against Defendant for the sum of $17,526.96, together with interest on said sum from September 11, 1958, in the sum of $5,472.26, and Plaintiff shall recover costs in the amount of $19.50."

cordance with the applicable provisions of chapter II, article I, of the Los Angeles Municipal Code (sections 21.00 to 21.199, inclusive of Ordinance No. 77,000 as amended), and particularly under Sections 21.14, 21.166 and 21.167, filed with the Los Angeles City Clerk its written statements setting forth, among other things, the taxable gross receipts of Plaintiff from wholesale sales as defined in Section 21.166 and retail sales as defined in Section 21.167 and the amounts of business license taxes due thereon for the license years and calendar years of receipts as follows:

| Dates of Payment | License Years | Calendar Years of Receipts | Taxable Gross Receipts | Amounts of Taxes |
|---|---|---|---|---|
| Feb. 26, 1954 | 1954 | 1953 | $73,724,391 | $32,272.60 |
| Feb. 28, 1955 | 1955 | 1954 | 77,703,045 | 34,291.50 |
| Feb. 29, 1956 | 1956 | 1955 | 81,868,657 | 35,968.10 |
| Feb. 28, 1957 | 1957 | 1956 | 77,431,554 | 33,674.40 |
| Feb. 28, 1958 | 1958 | 1957 | 79,416,579 | 35,033.40 |

"5. On the same dates Plaintiff paid to the Los Angeles City Clerk the said amounts of license taxes due as hereinabove set forth.

"6. Said payments above set forth represent the amounts paid for all places of business from which Plaintiff carried on within the City of Los Angeles business operations taxable under said sections.

"7. In preparing its said written statements showing its gross receipts from its wholesale and retail sales and in computing the amounts of business license taxes due on said gross receipts, for the license years 1954 through 1958, inclusive, *Plaintiff did not include in its reported gross receipts the aggregate sum of $28,432,135.30 from the sale of petroleum products to the United States Government under the following conditions:*

"(a) *All such products sold were delivered to the purchaser, the United States Government either by pumping said products aboard a merchant ship or by delivering said products to a port of embarkation for transhipment either by merchant ships or United States Government vessels.*

"(b) *All of said products were transported to places outside the continental limits of the United States excluding territories of the United States.*

"(c) *All of the products sold to the United States Government were consumed by it in its overseas operations, including the operation of military aircraft and military vehicles.*

"8. Upon auditing Plaintiff's records for the license years 1954-1958, inclusive, Defendant's City Clerk adjusted the total amount of Plaintiff's gross receipts from its sales of petroleum products by including therein the said $28,432,135.30 of gross receipts from sales described in subparagraph 7 above and asserted deficiencies and interest against Plaintiff as follows:

| License Year | Gross Receipts | License Tax | Interest | Total Tax Interest |
|---|---|---|---|---|
| 1954 | $11,077,581.55 | $5,539.00 | $1,523.23 | $7,062.23 |
| 1955 | 15,121,887.47 | 7,561.00 | 1,625.62 | 9,186.62 |
| 1956 | 2,032,531.12 | 1,016.50 | 157.56 | 1,174.06 |
| 1957 | 452.00 | 0.50 | 0.50 | 0.55 |
| 1958 | 199,683.16 | 100.00 | 3.50 | 103.50 |
| Totals: | $28,432,135.30 | $14,217.00 | $3,309.96 | $17,526.96 |

"9. Thereafter, Defendant's City Clerk determined a net deficiency of Los Angeles Business License Tax payable by Plaintiff for the license years 1954 - 1958 in the total amount including interest of $17,526.96 all as set forth in paragraph 8 above. Said deficiency together with interest and penalties thereon was assessed to Plaintiff on or about August 22, 1958 by the said City Clerk by its notice of tax due No. 910873. On September 11, 1958 Plaintiff paid the total amount of said assessment, to wit $17,526.96, to the said City Clerk.

"10. Thereafter, and within the time prescribed by the appropriate sections of the Los Angeles City Charter and the Los Angeles Municipal Code, Plaintiff presented and filed with said City Clerk on or about June 23, 1960, a verified claim in writing for a refund of taxes including interest thereon in the amount of $17,526.96, and certain other taxes not involved herein, upon the form prescribed and furnished by Defendant. A copy of said claim for refund is attached hereto, made a part hereof and marked Exhibit A. Of the sum of $20,217,41 which is the subject of said claim for refund, the amount of $17,526.96 is the subject of this action. Plaintiff's claim to the extent of the amount and items herein involved has been rejected by the Defendant's City Counsel and City Clerk. No portions of said taxes, including interest thereon in the sum of $17,526.96 has been refunded or repaid to Plaintiff.

"11. Attached hereto, made a part hereof and marked Exhibit B are copies of a form of sales contract entered into with the United States for bulk petroleum products and

Company documents illustrative of the delivery of products sold thereunder. Attached hereto, made a part hereof and marked Exhibit C is a contract for the sale of products sold to the United States, other than in bulk, and Company documents illustrative of the delivery procedures respecting products delivered thereunder.'' (Italics added.)

Findings of Fact and Conclusions of Law were waived. On January 2, 1963, the trial court filed its ''Memorandum Opinion''[2] and judgment was entered February 27, 1963. The within appeal follows.

The sole issue presented on this appeal is whether the tax imposed by the City, under the stipulated facts, is an impost

[2] ''The City of Los Angeles taxes wholesale and retail sellers for the privilege of doing business, the tax being measured by the amount of the seller's gross receipts. (Los Angeles Municipal Code §§ 21.166 and 21.167.) The City included in the measure of its business tax on Union Oil Company amounts received by Union Oil from its sale of petroleum products to the United States Government for shipment and use overseas.

''To the extent the tax was computed on such receipts it was a tax on exports, prohibited to the states and their instrumentalities by the United States Constitution. (Article I, Section 10, Clause 2.) Payment to Union Oil for these petroleum products was made after these products had been delivered to merchant ships or ports of embarkation for transshipment overseas, and hence after they had acquired the status of exports for the purpose of exemption from taxation. A tax on the sale of an article is a tax on the article itself. (*Brown* v. *Maryland*, 25 U.S. (12 Wheat) 419, 444 [6 L.Ed. 678, 687]; *A. G. Spalding & Bros.* v. *Edwards*, 262 U.S. 66 [43 S.Ct. 485, 67 L.Ed. 865].) A business tax measured by export sales is deemed a tax on exports. (*Richfield Oil Corp.* v. *State Board of Equalization*, 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80]; *Gough Industries, Inc.* v. *State Board of Equalization*, 51 Cal.2d 746 [336 P.2d 161].)

''The term 'export' is not coterminous with the term 'commerce', and the limits of one cannot be read into the other, as the City Attorney has attempted to do. (*Richfield Oil Corp.* v. *State Board of Equalization*, 329 U.S. 69, 75, 76 [67 S.Ct. 156, 91 L.Ed. 80, 88, 89].) But even if export were to be considered constitutionally a subdivision of commerce, these sales would fall within the classification of commerce, both in its sense of movement (*Caminetti* v. *United States*, 242 U.S. 470 [37 S.Ct. 192, 61 L.Ed. 442]; *Powell* v. *United States Cartridge Co.*, 339 U.S. 497 [70 S.Ct. 755, 94 L.Ed. 1017]) and in its sense of mercantile trade. [The United States Government in 1962 purchased $250 million of petroleum products from overseas suppliers for use overseas; patently the sales in this case were directly competitive with such overseas purchases.]

''That the buyer is the United States Government is immaterial; it, too, is entitled to the benefit of the prohibition against state taxation of imports and exports. (*Asiatic Petroleum Co.* v. *United States*, 78 Ct. Cl. 696.) ''

or duty on an export as that term is used in the Constitution.[3]

■ City concedes in its opening brief that "if the factual distinction between the present matter and that involved in *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80], is without relevance, the judgment should be affirmed."

The factual difference which City asserts renders the *Richfield Oil* decision inapplicable is that in the *Richfield Oil* case the purchaser was a foreign government while in the case at bar, the purchaser is the United States government.[4]

City has presented no authority which requires that the nationality of the purchaser differ from that of the seller before the transaction can qualify as an export within the constitutional protection.

What was stated by Mr. Justice McComb in *Gough Industries* v. *State Board of Equalization,* 51 Cal.2d 746, at page 749 [336 P.2d 161], is helpful: "[2] From the foregoing authorities, [*i.e. Richfield Oil Corp.* v. *State Board of Equalization,* 329 U.S. 69 (67 S.Ct. 156, 91 L.Ed. 80) ; *Matson Nav. Co.* v. *State Board of Equalization,* 136 Cal.App.2d 577 (289 P.2d 73) ; *A. G. Spaulding & Bros.* v. *Edwards,* 262 U.S. 66 (43 S.Ct. 485, 67 L.Ed 865)] it appears that where an article is manufactured and sold in one of the states *for export to a foreign country,* it is free from state sales tax under the import-export clause of the United States Constitution *if at*

---

[3]United States Constitution, article I, section 10, clause 2, provides as follows: "No state shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."

[4]The following occurred, in part, during oral argument before this court when the City was presenting its opening argument:

"Q. By Mr. Justice Fourt: The nub of your argument is this, you cannot have a commercial transaction between an oil company and the federal government when they [i.e. federal government] use the oil abroad.

"A. By Mr. Doherty: When they use it solely for governmental purposes, yes.

"Q. By Mr. Justice Fourt: That is not a commercial transaction.

"A. By Mr. Doherty: The use by the government is not a commercial transaction ... *we have got to have foreign commerce, there must be the dealings between persons under different sovereignties. . . .*" (Italics added.)

*the time title passed the certainty of the foreign destination was plain.''* (Italics added.) (See *Eardley Fisheries Co.* v. *City of Seattle,* 50 Wn.2d 566 [314 P.2d 393].)

To state these transactions so formally conducted, of so obvious a character and so evidently in such complete good faith, were local sales in Los Angeles would be a purely arbitrary pronouncement.

This court has frequently made hairline distinctions to uphold a tax on interstate commerce and thereby prevent such commerce from escaping its fair proportion of the burden of taxation. No such difficulty presents itself here. ■ Our research leads us to conclude that no court has attempted to whittle down the constitutional inhibition against a tax by either the federal government or the states without the consent of Congress upon imports and exports. That inhibition is unqualified (discriminatory or otherwise) and prohibits Congress from permitting a state to levy a tax upon an export except for the use and benefit of the United States Treasury.

■ In this case the contract for the sale of the oil contemplated its export to foreign lands and it was delivered to such lands.

The City urges a distinction without a difference.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 22, 1964, and appellant's petition for a hearing by the Supreme Court was denied July 29, 1964.