[Civ. No. 28401. First Dist., Div. Two. Mar. 29, 1971.]

SOUTHERN PACIFIC EQUIPMENT COMPANY,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Robert L. Pierce and Arnold I. Weber for Plaintiff and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, John J. Klee, Jr., and Philip M. Plant, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**DAVID, J.**[*]—Plaintiff appeals from a judgment entered following nonjury trial denying relief upon its complaint to recover sales taxes paid under protest to defendant State Board of Equalization (hereafter "Board").

The case was tried upon a stipulation of facts which may be summarized as follows:[1] Appellant is a wholly owned subsidiary of Southern Pacific Company ("SPCo."), a common carrier by railroad operating in California, Oregon, Nevada, Utah and four other states. Appellant was organized to acquire railroad rolling stock and equipment for SPCo. It shares common facilities at SPCo.'s headquarters in San Francisco and only employs corporate officers, who are also officers of SPCo.

Appellant made various sales of cast steel railroad freight car wheels to SPCo. for use in its transportation business between January 1961 and March 1968. Each sale was accomplished under the following circumstances: SPCo. would issue a purchase order to appellant for car wheels which directed shipment of the wheels to SPCo. at locations outside California, as directed, f.o.b. Sacramento or Los Angeles (locations of SPCo. shops). Shipment was directed to be made on commercial bill of lading showing appellant as consignor and SPCo. as consignee at specified destinations outside California, with freight collect via SPCo.'s common carrier facilities.

Appellant, which did not manufacture or stock such wheels, would then issue a purchase order for them to Griffin Wheel Company ("Griffin"), which manufactured wheels at its facilities at Colton, California. Appellant's purchase order would direct shipment to be made via SPCo. lines, f.o.b. Colton, to appellant in care of the general storekeeper (an SPCo. employee) at SPCo.'s yards at Sacramento or Los Angeles. Griffin employees would load the wheels into regular SPCo. box cars positioned on a spur track connecting with SPCo.'s main line track and then ship them via SPCo. to the Sacramento or Los Angeles yards.

Upon arrival at either location, the wheels would be unloaded by SPCo. employees from the regular box cars and pressed by them onto axles owned by SPCo. Its only facilities for pressing wheels onto axles were located at Sacramento and Los Angeles. The wheel-axle units were then loaded by

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]No findings of fact were filed by the trial court; application of taxing statutes to uncontradicted facts present questions of law for this court. (*Montgomery Ward & Co.* v. *State Bd. of Equalization* (1969) 272 Cal.App.2d 728, 734 [78 Cal.Rptr. 373], cert. den. (1970) 396 U.S. 1040 [24 L.Ed.2d 684, 90 S.Ct. 688].)

SPCo. employees onto SPCo. flat cars specially recessed to carry such units. All expenses for this operation were absorbed by SPCo.

After being loaded, the wheel-axle units would be shipped via SPCo. to destinations in Oregon, Nevada or Utah, where they would be placed onto SPCo.'s railroad cars for use in its transportation business. Bills of lading for such movement issued by SPCo. would name appellant as shipper, SPCo.'s storekeeper at such destinations as consignee, and SPCo. as carrier. Griffin would bill appellant for the cost of the wheels, and appellant would bill SPCo.

California Revenue and Taxation Code section 6385 provides: "There are exempted from the computation of the amount of the sales tax the gross receipts from sales of tangible personal property to a common carrier, shipped by the seller via the purchasing carrier under a bill of lading whether the freight is paid in advance, or the shipment is made freight charges collect, to a point outside this State and the property is actually transported to the out-of-state destination for use by the carrier in the conduct of its business as a common carrier. . . ."

The sales were not exempt from taxation under California Revenue and Taxation Code section 6385.

Appellant contends that the sales were exempt from taxation under Revenue and Taxation Code section 6385 asserting that exemption results from its mere "technical compliance" with all provisions of said statute, regardless of whether a carrier acted in California "in some degree, as buyer" and without regard to rulings issued by the Board. The Board asserts that its rulings, embodying the intent of section 6385, as well as the language of the statute, must be followed and that appellant did not fully comply with all requirements.

Appellant next argues that SPCo.'s conduct in unloading the wheels, pressing them onto axles, and reloading the completed wheel-axle units onto special flat cars did not constitute a use of the property rendering the sale of the wheels taxable. The Board asserts that such conduct in California precludes application of the exemption contained in section 6385.

Appellant finally argues that if exemption does not apply, then SPCo. is liable for the taxes as purchaser, not appellant as seller; the Board asserts that the taxes were properly assessed against appellant.

As to appellant's first argument, section 6385 is properly construed in interpretive rulings of the Board relating to use of purchased property in California prior to delivery out of state. ██ The basic element required for imposition of the retail sales tax is a sale of tangible personal

property "in this state." (Rev. & Tax. Code, § 6051.) Section 6385 was construed by the Supreme Court in *Standard Oil Co.* v. *Johnson* (1944) 24 Cal.2d 40, 48-49 [147 P.2d 577], as a clarification rather than change of existing law as had been stated in *Standard Oil Co.* v. *Johnson* (1942) 56 Cal.App.2d 411 [132 P.2d 910], in which conduct occurring inside California was held sufficient to subject sales of oil to a carrier for use outside California to the retail sales act (p. 424). The Supreme Court examined the contractual terms and circumstances involved in its *Standard Oil* case, in order to determine whether the parties' "intent" was for the carrier to receive oil for shipment "in its capacity as common carrier" or rather *"as buyer."* (Pp. 46-47.)

Similarly, the court in *H-R Truck etc. Co.* v. *State Bd. of Equal.* (1958) 166 Cal.App.2d 378 [333 P.2d 151], recognized the distinction between meeting requirements of the statute "on the face of the transactions" and meeting them "in substance." (Pp. 381-382.) That the court's statements regarding the sufficiency of literal compliance with the statute were limited to the clearly inapplicable issues of location of passage of title or possession, and bad faith, is demonstrated by its implicit recognition that a tax exempt status could be lost by conduct ("hauling payloads") occurring inside California. (P. 385.) Moreover, the court explicitly recognized that a construction of the statute rendered by the Board, "while not controlling, is always given great respect." (P. 383.)

Less than one year after the *H-R Truck* case, the Board interpreted section 6385 as requiring a seller to obtain a certificate from a purchaser stating in substance that " 'the property purchased will not be used to carry a payload or for any other purpose prior to its delivery at the destination point.' " (Business Taxes General Bulletin 59-7 [S-5], Aug. 19, 1959.) The same language was contained in a supporting certificate required by the Board in an interpretation of section 6385 dated August 24, 1967.[2] This document also stated that sales would be exempt from taxation when the property was, inter alia, "Not put to use in this State prior to the transportation by the purchasing carrier to the out-of-state destination. . . ." (Business Taxes General Bulletin 67-13 (S-83).)

Finally, the language of section 6385 itself may be considered to require a determination of the character of usage of the property by the carrier prior to delivery out of state. The exemption it provides applies to property "shipped by the seller via the purchasing carrier . . . , to a point outside

---

[2]Included on the reverse side of an SPCo. purchase order dated December 19, 1961, was the following statement: "Sales Tax Exemption Certificate: . . . This is to further certify that property covered by this order will not be used by purchaser prior to delivery to destination."

this State. . . ." A shipment subjected to substantial interruption inside California, *involving an exercise of independent control over the property, might well be considered as a shipment to a point inside the state,* rather than the requisite shipment "to a point outside this State."

This language is important because it emphasizes that for the exemption to apply, the role of the purchaser-carrier inside the state must be limited solely to its capacity as a common carrier transporting the purchased property. ■ The basic scheme of imposing taxes on sales occurring "in this state," as well as the three cases reviewed above and the rulings promulgated by the Board, all indicate that section 6385 was enacted as a means of insuring that transportation would be the sole function of the purchaser-carrier inside California. This factor alone distinguishes a purchaser-carrier from a purchaser-noncarrier. In these circumstances a claim to exemption status on the basis of literal compliance with the statute should be disallowed if the purchaser-carrier exercises sufficient dominion over the property inside California so as to transform its capacity from that of common carrier to that of buyer.

Under section 6385, the next question is whether SPCo. made a proscribed use of the property inside California. Appellant characterizes such conduct as "preliminary operations incidental to and facilitating the physical act of transportation," and as a "consolidation of two separate articles of freight in the interests of more economical and efficient transportation of the combined articles." Appellant contends that its exemption status could be lost under the Board's rulings only if the wheels had been attached to rail cars inside California and then used here to conduct common carrier revenue service.

Although such conduct would clearly transform the role of a purchaser-carrier from common carrier to buyer, in the same manner that mere standard inspection and packing of property inside California surely would not result in such a transformation (see *Gough Industries* v. *State Board of Equal.* (1959) 51 Cal.2d 746, 750 [336 P.2d 161], cert. den. (1959) 359 U.S. 1011 [3 L.Ed.2d 1037, 79 S.Ct. 1151]; *Standard Oil Co.* v. *Johnson, supra,* 24 Cal.2d at p. 47), less extreme conduct is not as easily characterized. In the present case the manufactured wheels, loaded into regular box cars, were the items purchased. ■ Instead of merely transporting the car wheels directly to points outside the state, as the statute contemplates, SPCo. ended the transportation in California for further fabrication essential to their use in its own transportation business. This required unloading the wheels from the regular box cars and, when fabricated, reloading the wheel-axle units onto specially recessed flat cars. The creation of such units undoubtedly precluded returning the wheels to the

manufacturer or seller. All fabrication was performed by SPCo. employees, the axles utilized were owned by SPCo., and all expenses were absorbed by SPCo. By such activities SPCo. appears to have exercised dominion in California over the purchased wheels to an extent inconsistent with its capacity as common carrier of the wheels. Section 6385 therefore did not apply.

It is unnecessary to determine whether SPCo. is liable for payment of the taxes under Revenue and Taxation Code section 6421, in view of the stipulated facts that appellant is a wholly owned subsidiary of SPCo. and that SPCo. has already reimbursed appellant for the taxes it paid. It is difficult to envision a parent corporation tendering a *known* false certificate to its fully owned subsidiary (cf. *H-R Truck etc. Co.* v. *State Bd. of Equal., supra,* 166 Cal.App.2d at p. 385), and appellant fails to indicate what substantive difference results from one such entity paying the tax rather than the other.

The sales were not exempt on the theory that title did not pass in California.

Under the law applicable to the sales in issue, the passage of title to purchased goods depended upon the parties' intention as ascertained from their conduct, the terms of the sales contract, and the circumstances of the case. (*Standard Oil Co.* v. *Johnson, supra,* 24 Cal.2d at pp. 45-46; *Diebold, Inc.* v. *State Board of Equal.* (1959) 168 Cal.App.2d 628, 639-640 [336 P.2d 650].) Although the purchase orders in the present case issued by SPCo. to appellant directed shipment of the wheels to destinations outside California (though f.o.b. Sacramento or Los Angeles), they made no mention of where title was to pass. ■ However, given the occurrence in California of sufficient exercise of dominion over the wheels by SPCo. to transform its capacity from common carrier to buyer, it follows that by such conduct passage of title to the wheels also occurred in this state. Title was found to have passed in California in the *H-R Truck* case (166 Cal.App.2d at p. 381), in which section 6385 was held applicable. This further substantiates the present conclusion.

Such taxation is not precluded by the commerce clause.

■ Appellant's contention that the commerce clause precludes taxation of the present transactions as interstate sales fails since title passed and dominion over the wheels was taken in California. ■ A state sales tax may be imposed upon an intrastate transaction, involving local activity, even "though the article sold or delivered is to be forthwith shipped out of the state." (*Shell Oil Co.* v. *State Bd. of Equal.* (1966) 64 Cal.2d 713, 724 [51 Cal.Rptr. 524, 414 P.2d 820], app. dism. (1967) 386 U.S.

211 [17 L.Ed.2d 870, 87 S.Ct. 973], and federal cases cited therein; 3 Witkin, Summary of Cal. Law (1960) Taxation, § 38, p. 2151.) The record herein demonstrates that SPCo. assumed possession of the wheels in California in its capacity as a buyer.

Nor is the tax invalid under *Montgomery Ward & Co.* v. *State Bd. of Equalization, supra,* 272 Cal.App.2d 728, in which a California use tax was invalidated on the ground that its failure to allow any credit for a Nevada sales tax, properly imposed upon property sold and delivered in that state, discriminated in favor of California intrastate commerce. (Pp. 759-760, 764.) If, as appellant suggests, use taxes were actually imposed by Nevada and Utah upon the purchased wheels at issue, the imposition of such subsequent taxes, rather than those at issue, might be raised in those jurisdictions on grounds urged in the *Montgomery Ward* case.

The judgment is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied April 28, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 26, 1971.