## A. G. SPALDING & BROS. *v.* EDWARDS, COLLECTOR OF INTERNAL REVENUE FOR THE SECOND DISTRICT OF NEW YORK.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 710.  Argued April 10, 11, 1923.—Decided April 23, 1923.

1. A sale of goods made in this country to a commission merchant for a foreign consignee, for the sole purpose of export, and consummated only when the goods, addressed to the foreign consignee, are delivered by the vendor to the exporting carrier, is a step in their exportation and, under Const., Art. I, § 9, cannot be taxed by the United States, even though the law under which the tax is imposed is a general one, not aimed specially at exports.  P. 67.
2. Goods were started in exportation when so delivered to the carrier, notwithstanding the fact that the bill of lading was not issued until later, and, notwithstanding the possibility that the commission merchant, holding the title, might change his mind and divert them from their foreign destination.  P. 69.

285 Fed. 784, reversed.

ERROR to a judgment of the District Court dismissing the complaint in an action to recover money exacted by the Government as a tax on a sale of goods.

*Mr. Frank Davis, Jr.,* with whom *Mr. Franklin Grady* was on the briefs, for plaintiff in error.

*Mr. Solicitor General Beck,* with whom *Mr. P. C. Alexander* was on the brief, for defendant in error.

From the history of the Export Clause in the Constitution, it will appear that the framers had in mind a tax levied directly and deliberately upon the act of exportation. They were not considering the application of general taxing laws, which might fall in individual cases upon merchandise, which might thereafter be exported.

The tax levied by § 600 of the Revenue Act of 1917 is an excise levied upon the business of selling the particular

articles named in the statute and is measured by the price for which the article is sold. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245.

The constitutional provision has been often interpreted by the courts. The most recent cases clearly negative the plaintiff's contention. *Cornell* v. *Coyne,* 192 U. S. 418; *Turpin* v. *Burgess,* 117 U. S. 504; *Coe* v. *Errol,* 116 U. S. 517; *Southern Pacific Co.* v. *Arizona,* 249 U. S. 472; *Peck & Co.* v. *Lowe,* 247 U. S. 165; *Pace* v. *Burgess,* 92 U. S. 372; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459. The cases which held taxes unconstitutional all clearly disclosed direct burdens upon some process or instrumentality of exportation. *Brown* v. *Maryland,* 12 Wheat. 419; *Almy* v. *Califor ,ia,* 24 How. 169; *Fairbank* v. *United States,* 181 U. S. 283; *United States* v. *Hvoslef,* 237 U. S. 1; *Thames & Mersey Ins. Co.* v. *United States,* 237 U. S. 19.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit to recover the amount of taxes collected by duress under color of the War Revenue Act of October 3, 1917, c. 63, § 600 (f), 40 Stat. 300, 316. The plaintiff, a corporation, manufacturer of the goods in question, says that the tax was laid on articles exported from a State, (New York,) in violation of Article I, § 9, of the Constitution of the United States. Upon demurrer the complaint was dismissed by the District Court on the merits.

The tax is " upon all  .  .  .  baseball bats,  .  .  .  balls of all kinds  .  .  .  sold by the manufacturer, producer, or importer " and was levied on three occasions admitted to be similar, so that the statement of one transaction will be enough. Delgado & Cia, a firm in the city of La Guaira, Venezuela, ordered Scholtz & Co., commission

merchants in New York, to buy for their account and risk a certain number of baseballs and baseball bats, &c., at an agreed price and to mark the packages

$$\begin{matrix} \text{D \& C} \\ \text{S} \\ \text{La Guaira} \\ \text{\# 36} \end{matrix}$$

to indicate the purchasers and their place. Scholtz & Co. thereupon sent to the plaintiff in writing, dated December 10, 1918, .this: "Export order from Scholtz & Co., Shipping and Commission Merchants . . . Please ship on or before the . . . . . . . . . . . . . per steamer . . . . . . . . . . . . Rush. . . . Errors in weight often entail heavy fines in Foreign Customs Houses, therefore be careful when weighing and marking Goods, as we shall hold you responsible for any fines caused through your errors. Cases or crates must be made to fit Goods as duty is paid by Gross weight. Shipping mark and number to be put on packages. [As above, with statement of the goods wanted.] Please send Memo. Invoice at once so we can apply for license and clear at Custom House." Scholtz & Co. instructed the plaintiff to deliver the packages so marked to the Atlantic & Caribbean Steam Navigation Co., an exporting carrier in New York. The plaintiff marked and delivered the goods as directed and was given a receipt by the carrier which it sent to Scholtz & Co. and which was exchanged by them for an export bill of lading in their name, dated February 10, 1919. The goods were transported and delivered in due time to Delgado & Cia. Scholtz & Co. paid the plaintiff on February 1 and were paid their commission by Delgado & Cia. in ninety days from date of shipment. The transaction from start to finish was understood and intended by the plaintiff and Scholtz & Co. to be for the purpose of exporting the goods to Delgado & Cia. in Venezuela. The question is whether the sale was a step in exportation, assuming as appears to be the fact, that the title

passed at the moment when the goods were delivered into the carrier's hands.

The fact that the law under which the tax was imposed was a general law touching all sales of the class, and not aimed specially at exports, would not help the defendant if in this case the tax was " laid on articles exported from any State ", because that is forbidden in terms by the Constitution. Article I, § 9. *United States* v. *Hvoslef,* 237 U. S. 1, 18. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292. Articles in course of transportation cannot be taxed. *William E. Peck & Co.* v. *Lowe,* 247 U. S. 165, 173. So we return to the question that we have stated. To answer it with regard to any transaction we have to fix a point at which, in view of the purpose of the Constitution, the export must be said to begin. As elsewhere in the law there will be other points very near to it on the other side, so that if the necessity of fixing one definitely is not remembered any determination may seem arbitrary. In this case, for instance, while the goods were in process of manufacture they were none the less subject to taxation if they were intended for export and made with specific reference to foreign wants. *Cornell* v. *Coyne,* 192 U. S. 418. *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245. On the other hand no one would doubt that they were exempt after they had been loaded upon the vessel for Venezuela and the bill of lading issued. It seems to us that the facts recited are closer to the latter than to the former side, and that the export had begun.

The very act that passed the title and that would have incurred the tax had the transaction been domestic, committed the goods to the carrier that was to take them across the sea, for the purpose of export and with the direction to the foreign port upon the goods. The expected and accomplished effect of the act was to start them for that port. The fact that further acts were to be done before the goods would get to sea does not matter

so long as they were only the regular steps to the contemplated result. Getting the bill of lading stands no differently from putting the goods on board ship. Neither does it matter that the title was in Scholtz & Co. and that theoretically they might change their mind and retain the bats and balls for their own use. There was not the slightest probability of any such change and it did not occur. The purchase by Scholtz & Co. was solely for the purpose of Delgado & Cia. and for their account and risk. Theoretical possibilities may be left out of account. In *Railroad Commission of Louisiana* v. *Texas & Pacific Ry. Co.*, 229 U. S. 336, the consignees might have retained the goods at New Orleans instead of shipping them abroad. The fact that they came to New Orleans by rail from another place in the State made no difference. The same principle was applied in *Texas & New Orleans R. R. Co.* v. *Sabine Tram Co.*, 227 U. S. 111, 123. The overt act of delivering the goods to the carrier marks the point of distinction between this case and *Cornell* v. *Coyne*, 192 U. S. 418. To put it at any later point would fail to give to exports the liberal protection that hitherto they have received; of which an example may be seen in *Thames & Mersey Marine Ins. Co.* v. *United States*, 237 U. S. 19.

*Judgment reversed.*