### R. J. REYNOLDS TOBACCO CO. v. ROBERTSON, Collector of Internal Revenue.

District Court, M. D. North Carolina. April 27, 1937.

188

**HAYES, District Judge.**

The parties waived jury trial and stipulated the facts upon which the case is determined. R. J. Reynolds Tobacco Company, a New Jersey corporation, is a manufacturer of cigarettes and other tobacco products for domestic and foreign consumption, its factories being located at Winston-Salem, N. C. Charles H. Robertson is collector of internal revenue for the district of North Carolina with his office located at Greensboro, N. C. The suit arises under the internal revenue laws and is brought to recover $6,537.95 for taxes, interest, and penalty paid under protest on May 8, 1935. Demand for refund was refused March 9, 1936.

On April 5, 1934, plaintiff withdrew from its bonded warehouse in Winston-Salem, N. C., a quantity of cigarettes and tobacco products consigned to foreign customers and delivered them to a common carrier at Winston-Salem for transportation to Norfolk, Va. Application blanks for export and export bond as prescribed by treasury regulations were executed but the carrier was robbed before arrival in Norfolk, and only a small portion of the shipment was recovered. The tax is on the portion of merchandise which did not reach the port of Norfolk.

The collector concedes that the tax would be invalid if a sales tax. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865. The plaintiff insists that it is a sales tax or, if not strictly a sales tax, it is a tax which accrued only on sale; that the sale was a step in the exportation and therefore not subject to a tax because of article 1, § 9, cl. 5, of the United States Constitution which provides: "No Tax or Duty shall be laid on Articles exported from any State."

The case turns on the nature of the tax. If it is an excise tax on the manufacture of cigarettes, the constitutional provision does not apply. The manufacture of goods for export is subject to tax because manufacture is not a part of exportation. Cornell v. Coyne, 192 U.S. 418, 426, 24 S.Ct. 383, 384, 48 L.Ed. 504; Spalding & Bros. v. Edwards, supra. If it is a tax on the sale, as distinguished from a tax on manufacture, the sale here would bring this case under Spalding & Bros. v. Edwards, supra, which makes the sale a part of the export and renders the taxing statute inoperative. Whatever may have been the law under earlier decisions, the nature of the tax is definitely fixed as an excise tax on the manufacture of cigarettes. Liggett & Myers Tobacco Company v. United States, 299 U.S. 383, 57 S.Ct. 239, 241, 81 L.Ed. 294, decided January 4, 1937. That decision construed the same statutes, U.S. C. title 26, sections 700(a), 701, 1049, 1350 and 1691, 26 U.S.C.A. §§ 700(a), 701, 1049, 1350, 1691(a). There the court held it was a tax upon the manufacture of tobacco and said: "True the limit of time for making payment is when the product is sold or removed, but this is a privilege designed to mitigate the burden; it indicates no purpose to impose the tax upon either sale or removal."

Undoubtedly the shipment was intended for, and started on, a foreign destination, and assumed an export status on the commencement of the movement from Winston-Salem so as to bring the shipment under the federal control as distinguished from state regulation. Railroad Commission of Louisiana v. Texas & Pacific Railway Co., 229 U.S. 336, 33 S.Ct. 837, 57 L. Ed. 1215. But the tax here involved is not a burden on exports; it is a tax on the manufacture of cigarettes which arose upon their manufacture with payment deferred until removal or sale of the product.

The power of Congress to lay excise taxes on the manufacture of cigarettes is unquestioned. Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715, and Turpin v. Burgess, 117 U.S. 504-506, 6 S.Ct. 835, 29 L.Ed. 988. A tax on the general mass of property or on its production is not a tax on exportation.

Section 835(a) (1) of U.S.C.A. title 26 provides: "Manufactured tobacco, snuff, cigars, or cigarettes may be removed for export to a foreign country or for shipment to a possession of the United States without payment of tax under such rules and regulations and the making of such entries, and the filing of such bonds and bills of lading as the Commissioner, with the approval of the Secretary, shall prescribe."

Regulation 73 relating to exportation without payment of tax of tobacco manufactures require an export bond (article 3), application for withdrawal on form

550 (article 6), delivery of shipments (article 9), and disposition of copies on form 550 (article 10). Article 12 provides: "The collector of customs with whom entry on form 550, revised, must be filed will fill in on the back of each copy of said form the order for inspection and lading. The inspector of customs will carefully examine the packages of the articles described in the entry. He will examine the contents of such packages as are found broken or tampered with or which he is led to suspect do not contain the merchandise originally packed therein, and make a special report thereon. The inspector of customs will make note in his report of any deficiency in quantity or discrepancy between the article inspected and that described in the entry. * * *" Article 13 requires the collector of customs to execute a certificate of exportation on the back of each copy of the entry on form 550, revised. If goods are shopped to foreign ports without such inspection article 15 requires the manufacturer to deliver to the collector of internal revenue for the district from which the goods were shipped a lading certificate in accordance with the provisions of article 28 or "Proof of loss at sea," in accordance with the provisions of article 29. The effect of the various regulations places upon the manufacturer the duty of establishing satisfactory proof that the cigarettes destined to a foreign port were in fact laded on a ship for a foreign destination and recognizes no loss which will exempt the tax except proof of loss at sea. The provisions of the bond are inconsistent with any theory except that the penalty of the bond will be paid if the manufacturer fails to comply with these conditions. Moreover, similar regulations have been in force for many years and in the absence of such strict regulations it would be well nigh impossible to enforce the internal revenue laws. Long recognition by Congress of these regulations and the practices thereunder imports congressional approval of the administrative interpretation.

█ The effect of section 835, 28 U.S.C.A., above quoted is to confer an exemption in favor of the manufacturer if the cigarettes are in fact exported in accordance with the rules and regulations prescribed by the collector of internal revenue and the rules and regulations so prescribed by him appear to be reasonable and necessary to effectuate the purposes of Congress. This being a tax on the manufacture of cigarettes as was held in the case of Liggett & Myers Tobacco Co. v. U. S., supra, the exemption from such tax does not come into existence, unless and until, they are actually exported and satisfactory proof thereof submitted to the collector of internal revenue in accordance with the rules and regulations prescribed by the collector of internal revenue with the approval of the Secretary. The cigarettes in question through no fault of the United States never left the United States and were consumed therein. Since the manufacturer failed to export them and to submit satisfactory proof thereof it must be held liable for the tax.

█ There is a clear distinction between a tax levied on property in the mass or on the manufacturer of goods and a burden which is placed on a step in exportation. U. S. v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas.1916A, 286. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865; Thames & Mersey Marine Insurance Co. v. United States, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann.Cas. 1915D, 1087. The manufacture of goods, although for domestic and foreign consumption, is not a step in exportation within the meaning of the constitutional provision against levying a tax on exports. "The true construction of the constitutional provision is that no burden by way of tax or duty can be cast upon the exportation of articles, and does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated. The exemption attaches to the export, and not to the article before its exportation." Cornell v. Coyne, supra.

Since the Supreme Court in the case of Liggett & Myers Tobacco Co. v. U. S., supra, has defined the tax as being one on the manufacture of cigarettes which excludes the idea of a burden on exportation, there is no constitutional question presented here as the constitutional provision has no application to the statute under which the tax is levied, and since the plaintiff is unable to show the actual exportation of the cigarettes after their withdrawal from the factory, it follows that the tax liability attaches and that the plaintiff is not entitled to recover of the defendant.