WIGGINTON, Acting Chief Judge.
The relator in a mandamus action has appealed the summary final judgment by which the alternative writ previously issued was quashed and the petition dismissed. There is no substantial dispute in the material facts, so the question presented for decision is exclusively one of law requiring an interpretation of the Florida Revenue Act of 1949 [1] as applied to sales of tangible personal property falling within the purview and intent of the Import-Export Clause of the United States Constitution.
Appellant is engaged in the manufacture and sale of high frequency radio equipment for use in light aircraft The equipment is manufactured primarily for export prior to use or resale or further manufacture within the United States. The equipment is neither designed nor suitable for use in the United States, and for all practical purposes is compatible only with use in foreign countries.
The electronic equipment in question was manufactured by appellant pursuant to written export purchase orders received from foreign purchasers, which orders were placed either directly by the foreign purchasers or by their authorized agent, and the contract price was invoiced by appellant directly to the foreign purchaser or his authorized agent. The equipment was manufactured and designed for use on aircraft manufactured in the United States on orders from foreign purchasers. Such aircraft are subject to export documents, bear foreign registrations, are not authorized to operate within the United States except on a limited and temporary basis, and are transported either by the foreign purchaser or by a private ferry flying service (not a common carrier) from the point of manufacture to the foreign country under “ferry permits” issued by the Federal Aviation Agency authorizing the ferry flight.
Upon completion of construction the air^ craft is flown to Fort Lauderdale, Florida, where appellant’s manufacturing plant is located. Upon arrival at Fort Lauderdale,. the electronic equipment sold by appellant^ to the foreign purchaser for use on the aircraft is delivered, and delivery accepted by two different methods. Either the equip-' ment is delivered by appellant to a private service organization which, pursuant to agreement with the purchaser, installs the equipment in the aircraft following which it is ferried to the foreign purchaser’s destination, or the equipment is delivered to the purchaser or the private ferry service employed by it and set aboard the aircraft without being attached to or installed therein, and in its original form is transported by the aircraft to the foreign purchaser’s place of destination for installation at that point.
Appellee, in his capacity as Comptroller of Florida, levied against the sale of the electronic equipment so manufactured for and sold to the foreign purchaser the state sales tax as authorized by the Florida Revenue Act of 1949,[2] and in accordance with the rules and regulations adopted by the' Comptroller relating to sales in interstate and foreign commerce.[3]
*492 The rules and regulations quoted below were adopted for the purpose of implementing the legislative intent as to the scope of the tax as set forth in the pertinent section of the statutes, to wit:
“Section 212.06(5), Florida Statutes, F.S.A.:
.. “It is not the intention of this chapter to levy a tax upon tangible personal property imported, produced or manufactured in this state for export, provided that tangible personal property shall not be considered as being imported, produced or manufactured for export unless the importer, producer or manufacturer delivers the same to a licensed exporter for exporting, or to a common carrier for shipment outside the state or mails the same by United States mail to a destination outside the state; nor is it the intention of this chapter to levy a tax on radio broadcasting, or any sale which the state is prohibited from taxing under the constitution or laws of the United States.”
The sole question which the trial court conceived to be involved in this case, and the one on which his decision turned, is whether the sale of the electronic equipment in question under the facts above outlined is exempt from taxation under Clause 2, Section 10, Article I of the Constitution of the United States which provides as follows:
“No State shall, without the Consent of the Congress, lay any Impost or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress.”
In the rendition of his final judgment quashing the alternative writ of mandamus, the trial judge made findings and conclusions which may be fairly summarized as follows:
“(1) That in each instance the plane was the subject of a contract by which it was manufactured in the United States for the foreign purchaser.
“(2) That Appellant’s equipment is an essential part of an aircraft.
“(3) That the aircraft that flew to Fort Lauderdale were not the aircraft to be delivered to the foreign country, but were only parts thereof.
“(4) That the transactions in question constituted intra-state deliveries *493 of merchandise and performance of service subject in all respects to state taxation.
“(5) That such transactions are entirely disassociated from the process of exporting the plane.
“(6) That with respect to equipment not actually affixed to the plane Appellant had simply sold in the open market personal property which the purchaser intends, but is in no wise obligated to transport into a foreign country.
“(7) That the equipment not actually affixed to the plane was constructively attached to the plane in which it was intended to be used, and thus in the same category as the equipment actually bolted to the aircraft.
“(8) That the transactions with respect to which the taxes in question were collected were subject to tax.”
For the purpose of clarity we shall separately consider the taxability of the transaction wherein appellant’s electronic equipment was installed in and affixed to the aircraft, as distinguished from the transaction in which the equipment was merely placed aboard the purchaser’s aircraft and by it transported to the foreign destination designated by the purchaser.
With respect to the former type of transaction, the trial court held in substance that what the foreign purchaser was buying in the United States was a completely manufactured aircraft fitted out with certain required equipment necessary to fully utilize its service in foreign commerce. It was the conclusion of the trial court that the radio electronic equipment purchased from and manufactured by appellant for installation on the aircraft was an essential part of the finished unit which the foreign purchaser was buying in this country. The trial judge finally concluded that the transaction involving the sale of the electronic equipment by appellant to the foreign purchaser which was installed on the aircraft at Fort Lauderdale, Florida, constituted an intrastate delivery of merchandise which was subject in all respects to state taxation, and is entirely disassociated from the exporting process involving the aircraft as a completed unit. With the findings and conclusions of the trial court respecting this type of transaction, we are impelled to agree.
When the electronic equipment manufactured and sold by appellant to the foreign purchaser is installed in and affixed to the aircraft, it loses its identity as a shipment of tangible personal property and becomes an integral part of the aircraft as a completed and finished manufactured product. This being so, the electronic equipment as such never enters the stream of foreign commerce so as to be eligible for the exemption contemplated by the Import-Export Clause of the United States Constitution. The sale of the equipment so installed in and made a part of the aircraft is as much a transaction involving the sale of tangible personal property subject to taxes in Florida as was the sale to the manufacturer of the cooling, heating, radar, and other systems which were likewise incorporated in the finished aircraft for the safety, comfort, and convenience of the crew and passengers who will utilize it when placed in service. The aircraft is not a completed and finished product intended for export to the foreign purchaser’s destination until after the electronic equipment in question has been fully installed therein and affixed thereto. Since the subject of the order manufactured and sold by appellant is never committed to nor reaches the export stream as such, the tax in question cannot be held to be a tax on the export of-the property in question. It is therefore in all respects utilized as a final step in the manufacture of the aircraft according to the specifications of the purchaser, and is subject to the tax on the privilege of engaging *494 in the sale of tangible personal property-under the statutes of this state.
We next turn our attention to the second category of transaction in which the electronic equipment purchased by the foreign purchaser is merely placed aboard the purchaser’s aircraft for transportation to its foreign destination without being physically attached to or made a part of the aircraft itself. The trial court found that the equipment sold and delivered in this fashion constituted property which appellant had simply sold in the open market and which the purchaser intends, but is nowise obligated, to transport into a foreign country. The court opined that the equipment falling within this category should be considered as being constructively attached to the aircraft in which it was intended to be used, and is taxable to the same extent as if it were actually bolted to the aircraft.
With regard to this category of transaction it must first be determined whether the equipment sold by appellant to the foreign purchaser was sufficiently committed to the export stream at the time the tax would otherwise accrue as to make certain the foreign destination.
In the early case of Spalding & Bros. v. Edwards[4] a foreign purchaser placed an export order through its authorized agent in the United States for the purchase of a quantity of baseball bats and balls. After the order was filled by the manufacturer, it was placed in the hands of a common carrier for transport to the purchaser at its foreign destination. The State of New York attempted to levy a sales tax on the purchase so made and delivered. The manufacturer claimed that the property sold was exempt from the state sales tax under the Import-Export provision of the Constitution. In reaching its conclusion the Supreme Court of the United States, speaking through Justice Holmes, posed the problem to be resolved as follows:
“ * * * The question is whether the sale was a step in exportation, assuming as appears to be the fact, that the title passed at the moment, when the goods were delivered into the carrier’s hands. * * * To answer it with regard to any transaction we have to fix a point at which, in view of the purpose of the Constitution, the export must be said to begin. * * * ”
In holding that the articles purchased were exempt from the New York sales tax under the Import-Export Clause of the Constitution, the Supreme Court said:
“The very act that passed the title and that would have incurred the tax had the transaction been domestic, committed the goods to the carrier that was to take them across the sea, for the purpose of export and with the direction to the foreign port upon the goods. The expected and accomplished effect of the act was to start them for that port. The fact that further acts were to be done before the goods would get to sea does not matter so long as they were only the regular steps to the contemplated result. Getting the bill of lading stands no differently from putting the goods on board ship. * * ”
Appellee agrees that the foregoing rule announced in the Spalding case is sound, but distinguishes that case from the one sub judice by pointing out that in Spalding the shipment of goods by the foreign purchaser was committed by the manufacturer to the export stream by placing it in the hands of a common carrier for transportation to the foreign destination, whereas in our case the electronic equipment was merely placed aboard the purchaser’s aircraft which did not necessarily commit it to the export stream, but might have permitted it to be resold domestically without ever leaving this country. This is in accordance *495 with the holding of the trial court as recited in its final judgment. A similar possibility was pointed out in the Spalding case where it was argued that the foreign purchaser’s commission merchant domiciled in New York, Scholtz & Co., might divert the foreign shipment to the domestic stream of commerce. In rejecting this argument the Supreme Court said:
“ * * * Neither does it matter that the title was in Scholtz & Co. and that theoretically they might change their mind and retain the bats and balls for their own use. There was not the slightest probability of any such change and it did not occur. The purchase by Scholtz & Co. was solely for the purpose of Delgado & Cia. and for their account and risk. Theoretical possibilities may be left out of account. * * *»
It is our view that the act of placing the equipment aboard the purchaser’s aircraft at the manufacturer’s plant in Fort Lauderdale committed the property to the export stream, and effectively passed title thereof from the manufacturer to the purchaser to the same extent as if the equipment had been placed aboard a common carrier for transport to the purchaser at its foreign destination. The transaction did not constitute a sale by appellant on the open market thereby rendering it subject to the state sales tax. We do not conceive how the equipment placed aboard the aircraft without being physically attached thereto can be held to be constructively attached for tax purposes any more so than a critically ill person, while still alive, may be held to be constructively dead.
Our views hereinabove expressed find support in the decision of the Supreme Court of the United States in the Richfield Oil Corp. case.[5] In that case it appears that Richfield Oil Corp. was engaged in the production and sale of oil which it transported by pipeline from its refinery to storage tanks in the harbor of Los Angeles. It entered into a contract with the New Zealand government for the sale of a shipload of oil to be delivered f. o. b. Los Angeles. The oil was pumped from Richfield’s storage tanks into the hold of the New Zealand tanker and thereafter transported to its foreign destination. The Supreme Court of California held that the Import-Export Clause of the Constitution prohibiting states from laying any impost or tax on exports did not bar the imposition of the state sales tax. This holding was based upon the conclusion that the delivery of the oil which resulted in the passage of title occurred prior to the commencement of the exportation. That court suggested, and the State of California conceded, that a different result might follow if the oil had been delivered to a common carrier; for then it would have been placed in the hands of an instrumentality whose sole purpose is to" export goods, thus indelibly characterizing the process as a part of exportation.
In reversing the decision of the Supreme Court of California and invalidating the sales tax which the state had levied upon the sale of the oil, the Supreme Court of the United States said:
“The certainty that the goods are headed to sea and that the process of exportation has started may normally be best evidenced by the fact that they have been delivered to a common carrier for that purpose. But the same degree of certainty may exist though no common carrier is involved. The present case is an excellent illustration. The foreign purchaser furnished the ship to carry the oil abroad. Delivery was made into the hold of the vessel from the vendor’s tanks located at the dock. That delivery marked the commencement of the movement of the oil abroad. It is true, as the Supreme Court of California observed, that at *496 the time of the delivery the vessel was in California waters and was not bound for its destination until it started to move from the port. But when the oil was pumped into the hold of the vessel, it passed into the control of a foreign purchaser and there was nothing equivocal in the transaction which created even a probability that the oil would be diverted to domestic use. It would not be clearer that the oil had started upon its export journey had it been delivered to a common carrier at an inland point. The means of shipment are unimportant so long as the certainty of the foreign destination is plain.”
From the foregoing decision it appears in the case sub judice that the shipment of the electronic equipment by appellant manufacturer to the foreign purchaser in the latter’s ^personally owned aircraft rather than by way of common carrier was not determinative of the taxability of the transaction. Placing the equipment in the purchaser’s aircraft for transportation to its foreign destination just as certainly committed the property sold to the export stream as did the pumping of the oil by Richfield into the hold of the New Zealand tanker. This act likewise constituted a delivery of the property thereby exempting it from imposition of the state sales tax.
In the later case of Gough Industries, Inc. v. State Board of Equalization,[6] the manufacturer of electrical products sold to an Arabian corporation certain goods manufactured in the State of California. The property purchased was shipped by truck carrier from the manufacturer’s plant to the purchaser’s agent at Wilmington, California, where the goods were packed for foreign shipment. After being packed, the property was again shipped by truck carrier to the ocean carrier which transported it to Arabia. The State of California sought to impose on the goods sold and delivered in the manner indicated a state sales tax. The Supreme Court of California found four controlling factors to be present in the transaction, to wit:
“ * * * (a) the agreement of sale contemplated shipment of the goods in export, that is, from a seller in the United States to a buyer in a foreign country; (b) from the beginning of the transaction, the goods were committed to go all the way to the foreign country; (c) the movement of the goods had actually started when the tax was sought to be imposed; and (d) the journey was continuous and unbroken by any action or delay taken for a purpose independent of the transportation of the goods.”
Based upon the foregoing factors the court held that the electrical equipment involved in that case was exempt from the state sales tax under the Import-Export Clause of the Constitution. The same four factors appear to be present in the case sub judice, and based upon the same reasoning as that adopted by the Supreme Court of California, it would follow that the electronic equipment involved in this case is. likewise exempt from the state sales tax.
Appellee seeks to support the trial court’s, holding by citing numerous decisions in cases involving the applicability of state sales taxes to property involved in interstate commerce. We do not consider these-decisions either controlling or persuasive for the same reasons stated by the Supreme Court of the United States in the Richfield Oil Corp. case, supra. In holding that the relationship of the commerce clause of the United States Constitution to state statutes imposing a tax on the sale of personal property is clearly distinguishable from the-Import-Export Clause as it relates to the-same subject, the court said:
“The two constitutional provisions, while related, are not coterminous. To be sure, a state tax has at times been *497 held unconstitutional both under the Import-Export Clause and under the Commerce Clause. Brown v. State of Maryland, 12 Wheat. 419, 6 L.Ed. 678; Crew-Levick Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295. But there are important differences between the two. The invalidity of one derives from the prohibition of taxation on the import or export; the validity of the other turns nowise on whether the article was, or had ever been, an import or export. See Hooven & Allison Co. v. Evatt, 324 U.S. 652, 665, 666, 65 S.Ct. 870, 877, 878, 89 L.Ed. 1252 and cases cited. Moreover, the Commerce Clause is cast, not in terms of a prohibition against taxes, but in terms of a power on the part of Congress to regulate commerce. It is well established that the Commerce Clause is a limitation upon the power of the States, even in absence of action by Congress. Southern Pacific Co. v. State of Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050 [90 L.Ed. 1317]. But the scope of the limitation has been determined by the Court in an effort to maintain an area of trade free from state interference and at the same time to make interstate commerce pay its way. * * *
“It seems clear that we cannot write any such qualifications into the Import-Export Clause. It prohibits every State from laying ‘any’ tax on imports or exports without the consent of Congress. Only one exception is created— ‘except what may be absolutely necessary for executing its inspections Laws.’ The fact of a single exception suggests that no other qualification of the absolute prohibition was intended.
* * * ”
For the reasons and upon the authorities hereinabove cited, the final judgment appealed is affirmed in part, reversed in part, and the cause remanded for the rendition of an appropriate judgment in accordance with the views expressed herein.
CARROLL, DONALD K., J., and FITZPATRICK, W. L., Associate Judge, concur.

. Chapter 212, F.S.A.

. F.S. § 212.05, F.S.A.

. Rule 04(2) (b) and 64(3) now designated Chapter 318-1.64(2) (b) and 1.64(3) of the Official Compilation Rules and Regulations of tbe State of Florida, Volume II: Sales in interstate and foreign commerce.—
“(1) The retail sales tax is imposed on the sales price of each item or article *492 of tangible personal property when sold at retail in this state. However, the tax does not apply to sales which are not within the taxing powers of this state. This involves the question of interstate commerce.
“(2) If goods are sold within the State of Florida, but possession is taken by the purchaser without the state, the sales tax does not apply. Possession will be considered to be taken by the purchaser without the state if:
“(a) The dealer is obligated to deliver the goods outside the state, or
“(b) The dealer is, by the terms of the sale contract, obligated to deliver, as consignor and shipper, the goods to a common carrier or to the mails for trans-poration outside the state.
“(3) If goods are sold within this state and possession is taken by the purchaser within this state, the sales tax applies irrespective of the fact that the goods are to be transported outside of Florida by the purchaser immediately upon delivery, except as provided in paragraph (5) of this rule. For example: If goods are sold by a Florida dealer from his place of business in this state to a nonresident purchaser who accepts delivery in this state for immediate shipment to points beyond the sales tax applies. The tax also applies if a contractor purchases and accepts delivery of material in Florida for use in the performance of a contract in another state and ships these materials to himself in the other state.”

. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865.

. Richard Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80.

. Gough Industries, Inc. v. State Board of Equalization, (Cal.1959), 51 Cal.2d 746, 336 P.2d’ 161.