340 So.2d 475 (1976)
FRED McGILVRAY, INC., a Florida Corporation, Appellant,
v.
Reubin O'D. ASKEW, Governor, et al., Appellees.
No. 48754.
Supreme Court of Florida.
December 9, 1976.
*476 Richard P. Kenney, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Caroline C. Mueller, Asst. Atty. Gen., for appellees.
SUNDBERG, Justice.
This cause comes before us on appeal from the Circuit Court in and for Leon County. Our jurisdiction vests under Article V, Section 3(b)(1), Florida Constitution.
The trial court, the Honorable Ben C. Willis, prepared a summary final judgment which even counsel for appellant describes as "a model of clarity." We adopt as our own the court's findings of fact and analysis of the law applicable thereto:
"This cause is before the Court on the Motions for Summary Judgment of both the plaintiff and the defendants, and the Court having considered the pleadings, depositions, affidavit and other papers on file and having heard argument of counsel for the parties and being otherwise advised, it is
"ORDERED AND ADJUDGED:
"1. The Court has jurisdiction of the parties and the subject matter of this cause, which presents a justiciable controversy within Chapter 86, Florida Statutes for rendition of a declaratory judgment.
"2. There is no genuine issue of material fact and summary judgment may be entered as a matter of law.
"3. The plaintiff contests an assessment totalling $6,848.95 plus interest for alleged accrued sales and use taxes under Chapter 212, Florida Statutes. The plaintiff was a subcontractor to Roberts Realty, Ltd. for a construction project in the Bahamas wherein the plaintiff supplied materials to the contractor and fabricated or installed these materials for improvement of real property in the Bahamas in connection with plumbing and air conditioning equipment on the construction project. The contract was a cost plus fee type of contract. The tax assessed is principally on tangible personal property ordered by the plaintiff from various vendors, both within and outside the state, which were shipped by the vendors to the plaintiff or to Roberts Realty, Ltd., in care of Transworld Marine in Miami where they were stored and/or later loaded onto barges chartered by the general contractor for shipment to the Bahamas. In some instances the property purchased in the Miami area and some from out of state vendors were either picked up by plaintiff from the vendor or shipped to plaintiff's Miami address, but all eventually reached the Bahamas in connection with the contract. *477 There were no bills of lading or export declarations in connection with these items, and the barge transporting them is not a common carrier.
"4. Other types of property taxed involved a relatively small amount of money and are not in serious contention. They will be merely mentioned, but not discussed. They are: employee purchases for plaintiff reimbursed to employee by expense accounts but not showing initial payment of sales taxes; items claimed to have been taxpaid but invoices list no sum for sales taxes; freight charges on goods not shown to be sold F.O.B. shipping point; charges for labor sold along with sale and repair of property; and certain sales taxed at 3% when it should have been 4%.
"5. The question is whether or not goods purchased by plaintiff from various vendors and delivered to Transworld Marine at Miami and from there loaded onto a barge chartered by the plaintiff's prime contractor and shipped to the Bahamas in furtherance of plaintiff's construction subcontract are subject to sale and use taxes, or are they exempt as being a tax on exports forbidden by Clause 2, Section 10, Article I, U.S. Constitution, known as the Import-Export Clause. There is no issue but that the property involved is tangible personal property which would be subject to such taxes unless they are `exports' within the Import-Export Clause above mentioned. The plaintiff contends that they are `exports' and thus not taxable, in accord with State ex rel. Sunair Electronics, Inc. v. Green, Fla.App. 1st  1965, 177 So.2d 490; cert. denied, 180 So.2d 464. The state contends that they became taxable prior to their export, because the purchase or use activated the tax prior to their entry into the export stream.
"6. Section 212.06(5), Florida Statutes, states that it is not the intention of the sales and use tax law (Chap. 212) to levy a tax on property imported, produced or manufactured in the state `for export', but expressed tests for this as the delivery of the property `to a licensed exporter for exporting or to a common carrier for shipment outside of the state or mails the same by United States mail to a destination outside the state.' In the case at bench there is no contention that any of these conditions are met. However, the statute further expresses an intention not to levy a tax `on any sale which the state is prohibited from taxing under the Constitution.' This latter expression merely states what would be applicable regardless of the provisions of the statute.
"7. In the Sunair case, supra, it was held that the taxpayer's act of placing electronic equipment sold to a foreign purchaser aboard purchaser's aircraft, but not installing it thereon, committed the equipment to the export stream and effectively passed title thereof from the taxpayer to the purchaser so that this transaction did not constitute a sale by the taxpayer in the open market rendering it subject to the state sales tax.
"8. The case at bench differs from Sunair in that here the property is purchased and delivered and comes to rest at a storage place prior to being loaded onto the instrumentalities, i.e. the barges, which will move them outside the country to the foreign destination. This case is more analogous to, and is controlled by, Kosydar v. National Cash Register, 417 U.S. 62, [94 S.Ct. 2108] 40 L.Ed.2d 660 (1974). In that case NCR manufactured certain electronic machines especially for export which were not suitable in the domestic trade. Prior to shipment abroad they were stored in a warehouse in Ohio, which state sought to impose an ad valorem tax on them. The Supreme Court of Ohio ruled the tax was prohibited as the goods were exports and came within the Import-Export Clause of the Constitution. The Supreme Court of the United States reversed and in so doing stated the question to be whether a sufficient commencement of the process of exportation has occurred so as to immunize the articles from taxation. It was said that `at least some such entrance [into the export stream], is a prerequisite to the Clause's operation', and that its `protections are not available until the article at issue *478 begins its physical entry into the stream of exportation.' This case cited the case of Empresa Siderurgica v. County of Merced, 337 U.S. 154, [69 S.Ct. 995,] 93 L.Ed. 1276, which in turn referred to the early case of Coe v. Errol, 116 U.S. 517, 29 L.Ed. 715. In the Coe case it was said:
`Do the owner's state of mind in relation to the goods, that is, his intent to export them, and his partial preparation to do so, exempt them from taxation?'
A negative answer was given with the comment that not `until they have been shipped or entered with a common carrier for transportation to another state or have started upon such a transportation in a continuous route or journey' have they entered the status of being beyond the power of the state for taxation. Referring to the test in Coe, the Supreme Court of the U.S. in Empresa stated:
`Under that test [Errol v. Coe] it is not enough that there is an intent to export, or a plan which contemplates exportation, or an integrated series of events which will end with it... . It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice.'
"9. It is not perceived that Kosydar is inconsistent with or overrules Sunair. The latter case finds support in the U.S. Supreme Court decisions of Spaulding & Bros. v. Edwards, 262 U.S. 66, [43 S.Ct. 485] 67 L.Ed. 865, in which the goods were delivered to a common carrier for transport to the purchaser at its foreign destination, and Richfield Oil Corp. v. State Bd. of Equalization, 329 U.S. 69, [67 S.Ct. 176] 91 L.Ed. 80, in which oil purchased by the New Zealand government to be delivered F.O.B. Los Angeles was pumped from the seller's storage tanks into the hold of the New Zealand tanker and thereafter transported to its foreign destination. In both of those cases attempts to collect state sales taxes were held to violate the Clause. The Kosydar, Coe and Empresa cases involved ad valorem taxes. However, the principles are the same. The goods become immune from state taxation when they are sufficiently committed to the export stream at the time the tax would accrue as to make certain the foreign destination. When there is no delivery to a common carrier for delivery to the purchaser abroad, or no preparation of bills of lading or export declarations are made, or no physical placing of the goods on the instrumentality for removal from the country, prior to accrual of what would be taxable transactions under Chapter 212, then the immunities of the Import-Export Clause do not attach.
"10. The case of Sumitomo Forest Co. v. Thurston, U.S.C.C.A.9-1974, 504 F.2d 604, is in accord with the foregoing and in that case it was stated:
`Certainty of export evidenced by financial and contractual relationships does not by itself render goods "exports" before their commencement of their journey abroad.'
"11. The case of Farmer's Rice Cooperative v. County of Yola, [44 Cal. App.3d 1] 118 Cal.Rep. 500, is very similar to the case at bench and is in accord. This involves an ad valorem tax but the principles are the same.
"12. In view of the foregoing it is hereby declared that the goods purchased by the plaintiff and delivered to Transworld Marine without export declaration or bill of lading for foreign export duly executed are not exempt from Chapter 212 taxes under the Import-Export Clause of the U.S. Constitution. Such declaration is deemed dispositive of the issues involved and the collection of taxes and accrued interest shall follow in due course without the necessity of further judicial action. However, if it should become necessary to further implement this judgment jurisdiction is retained for that purpose, but this judgment is deemed to be final and no further judicial labor is contemplated.
"ORDERED AND ADJUDGED in Chambers at Tallahassee, Florida this 12th day of September, 1975."
*479 Appellant has phrased the question involved in this appeal as, "Does the State of Florida have constitutional and statutory authority to impose the sales tax on goods purchased from outside and within the State of Florida and for the sole purpose of being exported from Florida to the consumer in the Bahamas?" We believe that appellant's language assumes too much, and we therefore find that the question which the trial court answered affirmatively is better phrased by appellees:
"Whether the items at issue in the instant case which items were purchased inside the State of Florida or from outside the State of Florida and delivered into the State of Florida were `exports' and thus whether the Florida Department of Revenue was correct in assessing sales and use taxes on these items pursuant to Chapter 212, Florida Statutes."
As indicated above, we believe that the trial judge applied the law properly to the facts as he found them to be expressed in the pleadings and proof and in the motions of both parties for summary judgment. Of essential importance to this determination was whether there existed valid ocean bills of lading and export declarations, which would, of course, be convincing indicia of a commitment to the stream of exports. The trial judge expressly found that no such documents existed as to the items whose taxable status is at issue in these proceedings. Various documents, including bills of lading and export declarations, are appended to appellant's brief in this Court, but we agree with appellees that these papers were never properly before the lower court for purpose of the hearing on the motions for summary judgment. The documents were merely attached to an "Agreed Statement of Facts" prepared and filed by the appellant, but never accepted by appellees. In fact, appellees filed a response entitled "Answer to Agreed Statement of Facts" which denied and controverted the assertions in appellant's statement. Consequently, the contents of appellant's "Agreed Statement of Facts" had no procedural or evidentiary significance in determination of the motions for summary judgment presented to the trial judge. If appellant wished the purported documents to be before the court on the motion for summary judgment, Rule 1.370(a), Fla.R.Civ.P., would have been the appropriate procedure to utilize.
Central to our determination that appellant had no valid indicia of a commitment to export was an affidavit executed by the DOR tax examiner who conducted the audit of appellant's books and records. The affidavit recites in detail the inability of McGilvray or its vendors to show valid export declarations or bills of lading concerning the goods whose taxability is now at issue. The examiner stated in support of his conclusion that these items were subject to state sales and use taxes:
"The goods were being shipped not by a common carrier but by, in effect, McGilvray's own transportation. There were for the most part no Shipper's Export Declarations or Bills of Lading. In a few cases there were only unsigned Shipper's Export Declarations or Bills of Lading... ."
Section 212.06(5), Florida Statutes (1969),[1] establishes a presumption that tangible *480 personal property is not to be considered "as being imported, produced or manufactured for export unless the importer, producer or manufacturer delivers the same [i] to a licensed exporter for exporting, or [ii] to a common carrier for shipment outside the state or [iii] mails the same by United States mail to a destination outside the state." This presumption, of course, is rebuttable by the taxpayer. The facts properly before the trial court negated the assertion that the goods qualified for exemption by delivery to a common carrier and likewise failed to establish through proper documents or otherwise that the property had been committed to the stream of exports. Accordingly, the taxpayer in this case failed to carry its burden of overcoming the statutory presumption. It must follow, then, that the property here at issue "[came] to rest in this state and [became] a part of the mass property of this state."[2]
The final summary judgment in favor of appellees is affirmed.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, HATCHETT and ROBERTS (Retired), JJ., concur.
NOTES
[1] Section 212.06(5), Florida Statutes (1969), reads:

"It is not the intention of this chapter to levy a tax upon tangible personal property imported, produced or manufactured in this state for export, provided that tangible personal property shall not be considered as being imported, produced or manufactured for export unless the importer, producer or manufacturer delivers the same to a licensed exporter for exporting, or to a common carrier for shipment outside the state or mails the same by United States mail to a destination outside the state; or in the case of aircraft being exported under their own power to a destination outside the continental limits of the United States, or in the case of parts and equipment installed on aircraft of foreign registry, by submission to the department of duly authenticated copies of an aircraft manifest and a duly signed and validated United States customs declaration, each showing the departure of the aircraft and the export of the parts and equipment from the continental United States; and further with respect to aircraft, the canceled United States registry of said aircraft; nor is it the intention of this chapter to levy a tax on radio broadcasting, or any sale which the state is prohibited from taxing under the constitution or laws of the United States."
[2] Section 212.06(6), Florida Statutes (1969), enunciates:

"It is however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass property of this state."