PER CURIAM.
This is an appeal from a final judgment which reads in pertinent part:
THIS CAUSE was tried before the Court without a jury. The Court heard the evidence and the argument of counsel and has carefully considered them and the authorities cited.
The Defendant, Chester Berry, was a partner in 1974 in a coal company in Kentucky. At that time he also was interested in a rock pit in Bay County, Florida, some business interests in Miami and in Venezuela. The inference was that his main place of business was in Kentucky, although at the time he resided in Florida.
Berry became a substantial customer of Plaintiff, Linder Industrial Machinery Company (Linder) with most of the equipment purchased being sold and used in Florida by Berry or a corporation in which he was interested. Ordinarily, Lin-der did not sell to out of State customers because of agreements with the equipment manufacturers.
However, late in 1974 Linder made six sales of heavy equipment to Berry for use outside the State of Florida. The equipment was sold FOB Linder’s Hialeah yard and was to be delivered there for shipment at Berry’s expense to Kentucky. This was accomplished with the equipment being loaded at Linder’s place of business directly upon a “common carrier” vehicle for immediate transporting to Kentucky. It was not warehoused, held, or transferred in any manner by Berry or anyone for him prior to shipment. Delivery to Berry was accepted by the common carrier.
At that time Berry represented that he was exempt from sales tax in Kentucky and that he would submit his tax exemption number. As a result, Linder did not charge and collect the Florida sales tax on the sales.
In May, 1975, Berry purchased a used Allis-Chalmers loader for use in Venezuela. Again the sale was FOB Miami. In this instance, however, the equipment was resold by Berry to an independent licensed exporter for shipment to Venezuela. This stratagem was apparently common and was a means of expediting the exporting rather than being a bona fide sale of the equipment. Because of the planned export, no sales tax was collected by Linder on this purchase.
Berry did not submit the sales tax exemption numbers or proof of the exporting to justify Linder’s failure to collect the tax.
In 1977, the Florida Department of Revenue performed a sales tax audit of Linder’s books concerning the period of all the sales here involved. Objection was made to the failure to pay tax on these transactions. Berry was called upon by Linder to furnish evidence that the sales were tax exempt. Berry made an inadequate, unsuccessful effort of assistance. The Kentucky tax exemption was no bar to collection of the Florida tax. The Department of Revenue appar *744 ently paid little attention to the defense of intended Kentucky use of property sold and delivered in Miami.
As a result taxes, penalties and interest were assessed by the State of Florida against Linder in the amount of $18,-770.73 on the sale of equipment shipped to Kentucky and $523.79 for that exported to Venezuela. Linder paid the assessment and demanded reimbursement by Berry. Berry refused payment and the instant litigation ensued.
The question to be decided by the Court is whether the sales were subject to the Florida sales tax?
The sales come under the sales tax act unless exempt under Section 212.06(5)(a), Florida Statutes.
This section provides:
“212.06(5)(a). It is not the intention of this Chapter to levy a tax upon tangible personal property, imported, produced or manufactured in this State for export, provided that tangible personal property shall not be considered as being imported, produced or manufactured for export unless the importer, producer, or manufacturer delivers the same to a licensed exporter for exporting or to a common carrier for shipment outside the State or mails the same by United States mail to a destination outside the state. * * * (clauses dealing with aircraft, radio, or television broadcasting omitted) * * or any sale which the state is prohibited from taxing under the constitution or laws of the United States. Every retail sale made to a person physically present at the time of sale shall be presumed to have been delivered in this State.”

The Florida 3rd District Court of Appeal in Graybar Electric Company, Inc. v. State of Florida, Fla.App., 347 So.2d 718, stated:
“The Florida Supreme Court in McGilvray v. O’D.Askew, 340 So.2d 475 (Fla.1976) (Opinion filed December 9, 1976), has interpreted this statute to create a presumption that tangible personal property cannot be considered export goods exempt from the state sales tax unless one of three conditions obtain: (1) the property is delivered to a licensed exporter for exporting, or (2) the property is delivered to a common carrier for shipment out of the State, or (3) the property is mailed by the United States mails outside the State. The presumption created is rebuttable by the taxpayer upon a showing of any one of the above three conditions, in which case the property would not be subject to the State sales tax.”
So, if the evidence establishes that the Venezuela bound machinery was delivered to a licensed exporter for exporting or that the Kentucky machinery was delivered to a common carrier for shipment out of the State, then the respective transactions would not be taxable.
In this case the equipment was sold “FOB Miami” and delivery was accepted by the trucker as agent of the buyer.
Linder contends that the sale was completed, and it became Berry’s property prior to being loaded upon the common carrier for shipment to Kentucky. It was, the argument runs, a completed transaction and, therefore, subject to the tax. If it had been sold FOB some site in Kentucky but loaded on the same common carrier transport by the same employees at the same spot in Linder’s Miami yard, it would not have been taxable. But if the purchaser is responsible for the transportation (as in the instant case) it is taxable.
This pharisaical, fine distinction, is intriguing intellectually but results in poor justice and ignores both the substantive intent and the plain test given in the Statute.
The Legislature did not specify as to the test whether the sale was “complete” or whether title passed or who is responsible for the shipment. The test stated is whether the “importer, producer or manufacturer delivered same to a common carrier for shipment outside the State”.
*745 In this case the Kentucky bound equipment was so delivered. This Court, therefore, finds the transaction was not taxable.
The Venezuela equipment situation is not so simple. For exporting reasons not fully explained, this equipment was technically sold to an exporter for shipment. The proof of the exporting transaction left much to be desired. The Court finds the evidence insufficient to prove that the equipment was delivered by Linder to a licensed exporter for exporting. This transaction is, therefore, found to be taxable.
We approve and adopt the foregoing analysis.[1] There is no need to decide whether there is a constitutional prohibition against Florida imposing a tax on these transactions. By virtue of Section 212.-06(5)(a), Florida Statutes (1977), Florida has simply chosen not to do so.[2] Notwithstanding Judge Campbell’s dissent, we see nothing in Chapter 212 or in any reported decision which requires that in order for the sale to be exempt, the dealer have an intent to sell his product in interstate commerce at the time he originally acquires it or commences its manufacture.
AFFIRMED.
HOBSON, Acting C. J., and GRIMES, J., concur.
CAMPBELL, J., dissents with opinion.

. Berry did not file a cross-appeal with respect to the shipment which ultimately reached Venezuela.

. Linder’s claim for refund against the Department of Revenue has been stayed pending determination of this appeal.