CAMPBELL, Judge,
dissenting.
I respectfully dissent. I do so because I believe the trial court and the majority mistakenly interpreted and relied on Section 212.06(5)(a), Florida Statutes (1973), to exempt a transaction which, but for that mistaken interpretation and reliance, would clearly be taxable. In every other transaction a sales tax consequence would occur in Florida when title to the article sold passed in Florida. As a general rule title passes when delivery from the control of the buyer to the control of the seller occurs in Florida. The legislature provided an exception to that rule in a special limited circumstance contained in Section 212.06(5)(a), Florida Statutes (1973), which provides in pertinent part:
It is not the intention of this chapter to levy a tax upon tangible personal property imported, produced or manufactured in this state for export, provided that tangible personal property shall not be considered as being imported, produced or manufactured for export unless the importer, producer or manufacturer delivers the same to a licensed exporter for exporting, or to a common carrier for shipment outside the state or mails the same by United States mail to a destination outside the state; . . . nor is it the intention of this chapter to levy a tax on radio and television broadcasting, or any sale which the state is prohibited from taxing under the constitution or laws of the United States. Every retail sale made to a person physically present at the time of sale shall be presumed to have been delivered in this state.[1] (Emphasis added.)
The trial court and the majority place emphasis on the proviso of that statute concerning delivery to a common carrier, but in doing so they fail to give any import to the language in the statute preceding the proviso. I believe that preceding language must be construed to have some significance, and if so, its significance is to specifically prescribe who must be the deliverer to the common carrier in order to trigger the special exemption. The statute requires that for a transaction to be exempt where title passes in Florida, there must be delivery to a common carrier by a seller who imported, produced or manufactured for export the *746 items sold. If title passed in Florida and there was delivery to a common carrier for export, the transaction would not be exempt under the literal interpretation of the statute if the item sold had not previously been imported, produced or manufactured in Florida for the purpose of export. The record below does not establish that Linder, the appellant here, had such a purpose when it acquired the property for resale. An examination of the facts established below is essential to an understanding of this writer’s conclusion that the literal interpretation of the statute requires the transaction in dispute to be taxable.
At all times pertinent to this appeal, Lin-der was a Florida corporation engaged, among other things, in the sale of heavy industrial equipment. Its headquarters were in central Florida, but it had branch offices and storage facilities in various other parts of the state. Linder acquired its equipment through the Clark Equipment System primarily for resale within the state of Florida. Indeed, only five percent or less of its equipment was sold outside the state or to out-of-state customers, when the terms of its dealer agreement as to its geographical area of responsibility would not be violated.
Berry was a resident of Florida, maintaining business operations in Kentucky as well as Florida, and had been a substantial customer of Linder.
There were six sales of industrial equipment by Linder to Berry in 1974, each represented by an invoice which contained the terms “FOB Miami” and “VIA Customer Trans.” There was a further sale in 1975 which contained the same delivery terms.[2] The equipment purchased in 1974 was picked up at Linder’s storage facility in Miami by a common carrier hired by Berry, immediately following which it was transported to Berry’s business in Kentucky. The common carrier had no intrastate authority within Florida. No sales tax was collected from Berry by Linder because Berry had indicated that he was tax exempt and would furnish appropriate exemption numbers and documentation. He never did, however, and when the Florida Department of Revenue subsequently audited Linder and imposed the sales tax, Linder paid and brought its action below for breach of contract and for reimbursement from Berry.
In its final judgment, the trial court correctly concluded that the sales tax imposed was not prohibited by the constitution or laws of the United States. However, it did conclude that the tax was prohibited by the specific exemption created by Section 212.-06(5)(a). The trial judge was apparently of the opinion that this exemption was triggered by the mere fact that the equipment was delivered to the common carrier at Linder’s Miami facility. He made no initial finding that the particular equipment involved here had originally been imported, produced or manufactured in Florida for export.
For the reasons which follow, I would hold that the transactions in 1974 were not exempt and reverse.
I must assume, from reading Section 212.06 as a whole, that the State of Florida intends to impose its taxing power to the fullest extent allowable under the United States Constitution. As I read the numerous decisions of the United States Supreme Court, in an attempt to determine what is allowable under the United States Constitution, I find that the intent of the seller when he imports or manufactures goods, or the intent of the buyer when he purchases them, while relevant, is not determinative of the question of whether a particular transaction may be taxed by the state. See e. g., Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886). Rather, the determinative inquiry is whether the delivery of the goods to the purchaser, i. e., the passing of title, was a step in the process of exportation.[3] If delivery occurs within the taxing *747 state, a tax on the transaction will ordinarily be upheld. For example, in State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co., 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1963), a corporation manufactured pipe in Utah to meet specifications for specific out-of-state jobs. Although the contract called for shipment out of state and the sales price included freight charges, the Supreme Court reversed the Utah Supreme Court’s ruling that the certainty of interstate shipment made a sales tax on those shipments unconstitutional under the Commerce Clause. Reversal turned on the fact that the purchaser took delivery in Utah, i. e., title passed and the transaction was consummated before the purchaser shipped the goods out of state. See also Dodgen Industries, Inc. v. Iowa State Tax Commission, 160 N.W.2d 289 (Iowa 1968).
On the other hand, where there is a clear intent from the beginning that certain goods be exported and the act of delivery is a commitment of the goods to interstate commerce (or foreign export), the state where delivery occurred would be prohibited from levying a tax. In A.G. Spalding & Brothers v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865 (1923), for example, a foreign purchaser directed its agent in New York to instruct a New York manufacturer of baseball equipment to deliver certain equipment to an exporter for shipment to the purchaser. While noting that the state could have levied a tax on the goods while they were in the process of manufacture, regardless of the fact that they were being manufactured for export, the court stated that no tax could be imposed once the goods had been committed to the export stream. Delivery of the goods to the exporter was the event which took the goods out of the general mass of property in New York and committed them to the export stream. See also Richfield Oil Corp. v. State Board of Equalization, supra.
It would seem, therefore, that the State of Florida could extend its taxing power to all transactions which occur up to the point at which the goods enter the stream of export or interstate commerce. The so-called “Florida sales tax”, Chapter 212, Florida Statutes, which is actually an excise tax for the privilege of engaging in the business of selling tangible personal property at retail in Florida, is collectible from “dealers” and is due and payable as each item of such property is sold at retail in Florida. “Dealer” is defined in Section 212.06(2) as, among other things, “every person who manufactures or produces . who imports or causes to be imported tangible personal property ... for sale at retail ... in this state.” As in the previously discussed cases, this language focuses on where the sale, i. e., delivery, occurs and seems to make irrelevant the dealer’s intent at the time he imported, produced or manufactured the property. However, Section 212.06(5)(a) announces the legislature’s intent to exempt tangible personal property which a dealer imports, produces or manufactures for export, so long as it is delivered to a licensed exporter, common carrier or is sent out of state by United States mail.[4] Thus, it appears that the dealer’s intention at the time he acquires tangible personal property is relevant. This interpretation is bolstered by the fact that Section 212.06(5)(a) later provides that it is not intended to tax “any [other] sale which the state is prohibited from taxing under the constitution or laws of the United States.” Since this general exemption would have been sufficient to allow the state to extend its taxing power to the fullest extent possible, we must assume that the earlier, specific exemption was intended to protect transactions which the state would have otherwise been allowed to tax.
Unfortunately, this question of whether a dealer, if he is to qualify for the specific exemption, must have the intent to export the property at the time he acquires it, has not been addressed by the courts of this *748 state. In State ex rel. Sunair Electronics, Inc. v. Green, 177 So.2d 490 (Fla. 1st DCA 1965), the seller, unlike the instant case, manufactured certain electronic equipment with the specific intent to sell it in export, and the question before the court was whether the other requirements of Section 212.06(5)(a) had been met, i. e., delivery “to a licensed exporter for exporting.” I interpret that case as standing for the proposition that where property is manufactured in Florida for export, the subsequent sale of that property will not be subject to the sales tax if delivery within Florida is to a licensed exporter. The court there held that the sales were exempt when the equipment was delivered directly to the exporter for export. It also held that the sales were taxable where prior to export the equipment was delivered to third parties or to the purchaser for installation in Florida in aircraft for export after the installation. The court reasoned in the second instance that the property had come to rest, title passed and the sale was consummated in Florida prior to delivery for export.
The ruling in the first instance comports with the holding in A.G. Spalding & Brothers v. Edwards, supra. I disagree with the ruling in the second instance insofar as it suggests that the place of delivery is crucial for purposes of the specific exemption created by Section 212.06(5)(a). As I have indicated, that question is only relevant with respect to the general exemption. If a dealer manufactures certain property for export, and has proper documentation of that intent, then it is immaterial that delivery occurs in Florida and the property temporarily comes to rest here before it continues on its journey out of this state. I again emphasize, however, that only Section 212.-06(5)(a), and not the United States Constitution, prohibits a sales tax under those circumstances.
My attention has been called to the Florida Supreme Court’s decision in Fred McGilvray, Inc. v. Askew, 340 So.2d 475 (Fla.1976), but I find that that decision does not resolve the question of whether, absent an intent to export at the time of acquisition, mere delivery by a dealer to a licensed exporter or common carrier exempts the transaction. Not only was there no indication in that case of the Florida dealer’s intent when he acquired the construction materials, the facts also indicated that there had been no delivery to a common carrier. Thus, although the court did discuss the presumption created by Section 212.06(5)(a), the case actually turned on whether or not the taxpayer fell under the general exemption. Because there were no facts to indicate a commitment to the stream of export, the court ruled that the transaction was not exempt under the United States Constitution. The property had come to rest and became a part of the mass of property in this state, making the transaction taxable under Section 212.06(6).
From the foregoing and numerous other decisions, I would distill the following principles:
(1) If the intent to sell in interstate or foreign commerce was present when the dealer originally acquired the property, it does not matter where title to the property passes so long as the property continues in the stream of foreign or interstate commerce by one of the three means specified in Section 212.06(5)(a). Thus, the fact that title to the property passes and the property temporarily comes to rest here before it continues on its journey is irrelevant. The United States Constitution does not prohibit a sales tax once the property comes to rest; Section 212.06(5)(a) does, however.
(2) If an intent to sell in interstate or foreign commerce was not present when the dealer originally acquired the property, neither Section 212.06(5)(a) nor the United States Constitution prohibits a sales tax on the subsequent retail sale, i. e., delivery of property in Florida. In this respect, it should be noted that the last sentence of Section 212.06(5)(a) creates a presumption that delivery is within Florida if the purchaser is physically present at the time of sale.
(3) However, the transaction in (2) would be exempt if the purchaser took delivery of the property outside of Florida.
Florida Administrative Code Rule 12A-1.64, is confusing if it is applied to all three *749 transactions. It applies only to (2) and (3) by addressing the general exemption of Section 212.06(5)(a). It merely reiterates that the sales tax will not be levied on goods whose possession is taken outside the state, but will be levied if possession is taken here, even though the buyer intends to immediately ship them outside the state. Possession is taken outside the state where the sales agreement calls for delivery there by the dealer, or where the agreement calls for the dealer to ship them there by common carrier.
Turning now to the instant case, I have searched the record and find no indication that Linder imported the equipment with an intent to export it. Thus, under Rule 12A-1.64, the transaction would be exempt only if the sales agreement called for delivery outside the state by Linder or via a common carrier. The term “FOB Miami” and “VIA Customer Trans.” did not call for such delivery; it only provided that the purchaser would pick up the equipment in Miami and arrange for its shipment to its destination. As far as Linder was concerned, the sale had been consummated pri- or to the date when the purchaser’s carrier picked up the equipment.
For the foregoing reasons, I would reverse and remand.

. The underlined language was first added in 1951.

. The trial court ruled that this sale was taxable, and Linder has not appealed that ruling.

. “Export” includes shipment of tangible personal property to another state. See Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80, 91 (1946); *747 Gough Industries, Inc. v. State Board of Equalization, 51 Cal.2d 746, 336 P.2d 161, 163 (1959).

. Of course, if the purchaser takes delivery outside of Florida, then no retail sale has occurred here.