[Civ. No. 29779.    Second Dist., Div. One.    June 30, 1966.]

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, et al., Defendants and Respondents.

Anson, Gleaves & Larson, John H. Larson and Norman G. Oliver for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, A. R. Early and DeWitt W. Clinton, Deputy County Counsel, for Defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

WOOD, P. J.—This is an action to recover taxes which plaintiff paid to respondent county under protest. The taxes were levied by the respondents on certain chemical products which plaintiff contends are exempt from taxation, under the federal Constitution, as exports. The court concluded that the products had not entered the ''export stream'' and were not exempt from taxation. Plaintiff appeals from the judgment that it take nothing by its action.

Appellant contends that the products are exempt from taxation under article 1, section 10, clause 2, of the United States Constitution which provides that ''No State shall . . . lay any Imposts or Duties on . . . Exports. . . .''[1]

The matter was submitted on the pleadings and a written stipulation of facts.

Plaintiff manufactures a chemical product referred to as ''D.D.T. Technical,'' which is used in the preparation of another chemical product referred to as ''D.D.T. Concentrate.'' By reason of its chemical properties, D.D.T. Concentrate cannot be sold in the domestic market (United States). Prior to the first Monday in March of the years 1961 and 1962, plaintiff contracted with the General Services Administration (G.S.A.) and the United Nations International Children's Fund (UNICEF) for the preparation, packaging, and delivery ''F.A.S. vessel,[2] Los Angeles, California,'' of D.D.T. Concentrate for shipment outside of the territorial limits of the United States.

Also prior to the first Monday in March of said years, and pursuant to the contract, plaintiff received purchase orders to prepare certain quantities of D.D.T. Concentrate, which plaintiff prepared in the following manner: Plaintiff manufactured D.D.T. Technical and delivered it to Stauffer Chemical Company. Stauffer then prepared and packaged D.D.T. Concentrate (utilizing the D.D.T. Technical) in heavy fiber drums,

---

[1]Article XIII, section 1, of the California Constitution provides that ''All property in the State . . . not exempt under the laws of the United States shall be taxed in proportion to its value . . . .''

Section 405 of the Revenue and Taxation Code provides: ''Annually, the assessor shall assess all the taxable property in his county . . . .''

[2]Defined in the G.S.A. specifications as ''Delivered, free of expense to the Government, alongside overseas vessel and within reach of its loading tackle.'' The court found that the contract was for delivery ''F.S.A. vessel, Los Angeles, California.'' The purchase orders from G.S.A. and UNICEF refer to delivery F.S.A. vessel, Los Angeles or San Francisco (or Richmond). The UNICEF purchase order states, in bold type, ''Delivery Required: May 1962.'' That order also names a person in Los Angeles from whom forwarding instructions will be received.

especially designed for shipment on ocean vessels, as specified in the contract. The drums of concentrate then "remained at the Stauffer plant pending notification from the contracting agencies to deliver the product dockside."

The taxes herein were levied upon the packaged concentrate while it was at the Stauffer plant awaiting shipment instructions. Although it was stipulated that "All of said materials so stored were subsequently transported to the docks and shipped to foreign countries," the record does not show whether the contracting agencies had given the shipping instructions to plaintiff or Stauffer prior to the tax lien date.

Among other things, the court found that on the tax lien date the packaged concentrate had not been delivered to any dock or warehouse at Los Angeles Harbor, had not been delivered to any common carrier for transportation to the harbor, and had not "in any manner begun its physical movement to the harbor."

As previously stated, appellant contends that the packaged D.D.T. Concentrate at the Stauffer plant was exempt from taxation under article 1, section 10, clause 2, of the United States Constitution.

In *Hugo Neu Corp.* v. *County of Los Angeles,* 241 Cal. App.2d 703 [50 Cal.Rptr. 916], the plaintiff sought to recover taxes paid under protest to defendant county. Plaintiff, pursuant to a "long range agreement" to sell scrap iron to several Japanese corporations, had purchased several tons of scrap iron and had shipped it to plaintiff's storage depot on Terminal Island. It was stipulated, among other things, that there was a domestic market for the scrap iron; the scrap iron was unsegregated from plaintiff's other unsold scrap iron at the storage depot; there was no binding contract to sell the scrap iron to the foreign firms; and, as of the tax lien date, there was no order from the foreign firms to purchase any of the scrap iron. The trial court found that on the tax lien date the scrap iron was at Terminal Island awaiting sale; the scrap iron had not been invoiced to, or paid for by any purchaser, nor allocated to a particular shipment, nor consigned, nor sold to a particular buyer; "a strong probability of export existed" (the scrap iron was shipped to Japan a few weeks after the tax lien date); "but there had been no commitment to a particular purchaser, and no delivery for export had taken place either to a common carrier or to a buyer or to a

buyer's agent.'' On appeal from the trial court's judgment that plaintiff was not entitled to recover the taxes paid under protest, appellant contended that the scrap iron was exempt from taxation under article 1, section 10, clause 2, of the United States Constitution. In affirming the judgment the court emphasized that there was a domestic market for, and no definite plan for export of, the scrap iron, and said (at pp. 708-709 [citing many of the cases[3] relied upon by the parties in the present case]) : '' [T]he test for immunity from local taxation is 'the certainty that the goods have been committed to a movement outside the state and will not be diverted into channels of local trade.' . . . 'It is the entrance of the articles into the export stream that marks the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice.' [Citation.] Normally, goods are immune when they are shipped or entered with a common carrier for transportation to export or started on their journey. [Citations.] However, if the certainty of a foreign destination is plain, levying a tax is improper even though there is no delivery to a common carrier. (See *Richfield Oil Corp.* v. *State Board of Equalization* (1946) 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80], where delivery was made not to a common carrier but to the hold of the purchaser's vessel from the vendor's tanks located at the docks.) However, the interior movement of property, destined for ultimate removal to another country, which is preliminary or preparatory in character, does not constitute such movement as to confer immunity. [Citation.] Intent to make goods an export is not enough to make those goods immune from taxation [citation], and actual subsequent export of goods is not determinative as to their taxability as the tax lien date. [Citation.] ''

▆▆▆ In the present case, the facts are distinguishable from the facts in the *Hugo Neu* case in that here the D.D.T. Concentrate, pursuant to specific purchase orders from a particular purchaser, had been prepared and packaged especially for

---

[3]*Empresa Siderurgica, S.A.* v. *County of Merced* (1949) 337 U.S. 154 [69 S.Ct. 995, 93 L.Ed. 1276], affirming 32 Cal.2d 68 [194 P.2d 527, 11 A.L.R.2d 934]; *Joy Oil Co.* v. *State Tax Com.* (1949) 337 U.S. 286 [69 S.Ct. 1075, 93 L.Ed. 1366]; *Richfield Oil Corp.* v. *State Board of Equalization* (1946) 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80]; *Coe* v. *Errol* (1886) 116 U.S. 517 [6 S.Ct. 475, 29 L.Ed. 715]; *Von Hamm-Young Co.* v. *City & County of San Francisco* (1947) 29 Cal.2d 798 [178 P.2d 745, 171 A.L.R. 274].

ocean transport, and, under the stipulated facts, was not saleable in the domestic market. On the tax date the packaged concentrate was being held pending notification as to the ocean vessel to which it was to be delivered for export (and was thereafter delivered to a vessel and exported).

Applying the tests discussed in the *Hugo Neu* case to the facts in the present case, it was certain that the D.D.T. Concentrate, which could not be sold in the United States and which had been especially packaged for overseas shipment to a particular purchaser, was committed to a foreign destination and could not be diverted to domestic use. As stated in those tests, ''if the certainty of a foreign destination is plain, levying a tax is improper even though there is no delivery to a common carrier.'' The packaged concentrate was therefore exempt from taxation under the provisions of article 1, section 10, clause 2, of the United States Constitution.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied July 28, 1966, and respondents' petition for a hearing by the Supreme Court was denied August 24, 1966. Traynor, C. J., was of the opinion that the petition should be granted.