The National Cash Register Co., Appellant, v. Kosydar, Tax Commr., Appellee.

[Cite as National Cash Register Co. v. Kosydar (1973), 35 Ohio St. 2d 166.]

(No. 72-479—Decided July 11, 1973.)

168

170

*Messrs. Dargusch & Day* and *Mr. Roger F. Day,* for appellant.

*Mr. William J. Brown,* attorney general, *Mrs. Maryann B. Gall* and *Mr. Peter Stratigos,* for appellee.

*Per Curiam.* Section 10, Clause 2 of Article I of the United States Constitution provides: "No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports * * *." This case requires us to determine whether the machines in NCR's international inventory, which were assessed by the Tax Commissioner, were "exports" within the meaning of that clause.

In answering that question, the Board of Tax Appeals applied a mechanistic, two-fold formula which it culled from phrases found in the leading "export" cases. *Coe* v. *Errol* (1886), 116 U. S. 517; *A. G. Spalding & Bros.* v. *Edwards* (1923), 262 U. S. 66; *Richfield Oil Corp.* v. *State Board of Equalization* (1946), 329 U. S. 69; *Joy Oil Co.* v. *State Tax Commission* (1949), 337 U. S. 286; *Empresa Siderurgica* v. *County of Merced* (1949), 337 U. S. 154; *Hugo Neu Corp.* v. *County of Los Angeles* (1970), 7 Cal. App. 3d 21, 86 Cal. Rptr. 332; *Rice Growers' Assn. of California* v. *County of Yolo* (1971), 17 Cal. App. 3d 227, 94 Cal. Rptr. 847; *Cargill of California* v. *County of Yolo* (1972), 26 Cal. App. 3d 704, 103 Cal. Rptr. 257. A majority of this court, however, is of the opinion that the instant case is particularly ill-fitted for a mechanical disposition.

The cases from which the two criteria for immunity from taxation were extrapolated by the board embraced products which were completely fungible or were viewed as such. In that situation, we can agree that nothing less than delivery to a carrier, marking the commencement of move-

ment in the export stream, will suffice to guarantee that the process of exportation has been irreversibly initiated. This case, on the other hand, involves cash registers, accounting machines, and electronic data processing systems which have been ordered, designed and built exclusively to serve the peculiar needs of specific foreign consumers. It is uncontradicted on the record that, in every material respect, the machines involved herein are useless in the domestic market and never find their way there. Of all the cases examined, we were unable to find any situation where the "certainty of export" has been more clearly demonstrated than in this case*; the degree of certainty here exemplified is fully equivalent to that which attends the delivery of fungible goods to a carrier for the start of a journey to a foreign destination.

The decision of the Board of Tax Appeals is reversed, except as to that portion of the assessment which relates to items destined for sale in the possessions or territories of the United States. As to such latter assessment, the decision of the board is affirmed.

*Decision reversed in part and affirmed in part.*

HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

O'NEILL, C. J., and P. BROWN, J., dissent.

O'NEILL, C. J., dissenting. I dissent on authority of R. C. 5709.01 and the cases decided by the United States Supreme Court involving Section 10, Clause 2 of Article I of the United States Constitution. See *Coe* v. *Errol* (1886), 116 U. S. 517; *A. G. Spalding & Bros.* v. *Edwards* (1923), 262 U. S. 66; *Richfield Oil Corp.* v. *State Board of*

---

*Of perhaps equal certainty was the DDT in *Montrose Chemical Corp.* v. *County of Los Angeles* (1966), 243 Cal. App. 2d 300, 52 Cal. Rptr. 209 (cert. den. 386 U. S. 1004). But, see, *Rice Growers' Assn. of California* v. *County of Yolo* (1971), 17 Cal. App. 3d 227, 94 Cal. Rptr. 847.

*Equalization* (1946), 329 U. S. 69; *Joy Oil Co.* v. *State Tax Commission* (1949), 337 U. S. 286; *Empresa Siderurgica* v. *County of Merced* (1949), 337 U. S. 154.

R. C. 5709.01 provides, in pertinent part:

" * * * *All personal property located* and used in business *in this state* * * * [*is*] *subject to taxation* * * *.*" (Emphasis added.)

This tax applies to all property manufactured to order and "then taken to * * * [a] warehouse * * * to await shipment," whether that shipment is to be made to Columbus, Buffalo, San Francisco, or a foreign country.

The revenue raised by the tax imposed upon this property is used in accordance with law to pay for the local services of government by counties, municipalities, townships and health districts and for the operation of schools provided for the benefit of all private and corporate businesses and the citizens of the local communities in which those businesses are located.

The appellant in this case understandably would like to be relieved of its share of the taxes for the support of schools and local government upon its inventory awaiting shipment. Appellant contends that it is in a different position from all other manufacturers of products for both domestic and foreign shipment.

The only basis on which the appellant can claim immunity from this tax on its personal property inventory "stored prior to shipment" or "taken to an NCR warehouse in Dayton to await shipment" is that the tax imposed by the General Assembly of Ohio upon all personal property is unconstitutional under the provisions of Section 10, Clause 2 of Article I of the United States Constitution as to appellant's property, even though it is valid as to all other manufacturers' property awaiting shipment in warehouses.

No case decided by the United States Supreme Court supports appellant's position. In my opinion, it is easy to determine why this is true.

The sole issue in this case is: When does the exemption

from taxation provided in the export-import clause of the United States Constitution attach to the goods?

The controlling rule of law in this regard is succinctly stated by Mr. Justice Frankfurter in *Joy Oil Co.* v. *State Tax Comm.* (1949), 337 U. S. 286, at page 288, as follows:

"The Export-Import Clause was meant to confer immunity from local taxation upon property being exported, not to relieve property eventually to be exported from its share of the cost of local services. See *Coe* v. *Errol*, 116 U. S. 517, 527-28."

As Justice Frankfurter said in *Joy Oil Co., supra*:

"The circumstances which tended, at the time when the tax was assessed, to establish petitioner's intent to export the gasoline and the fact that the gasoline was eventually exported are not enough, by themselves, to confer immunity from local taxation. See, *e. g., Cornell* v. *Coyne*, 192 U. S. 418; *Empresa Siderurgica* v. *County of Merced*, 337 U. S. 154."

So in the instant case, the circumstances which tended, at the time the tax was assessed, to establish (1) petitioner's intent to export, (2) the certainty of export if a profit was to be made from the manufacture of the property, and (3) the fact that all similar property manufactured by the company in the past had been exported eventually are not enough, by themselves, to confer immunity from local taxation.

The appellant places emphasis upon the argument that many of the United States Supreme Court cases holding goods not immune from local taxes have so held because of possible diversion of the goods to the domestic market. It is asserted that those cases involved fungible goods, while the machines in the instant case, because of their character, were not saleable in the domestic market, were not fungible, and were not divertible, and, therefore, should be exempt from local taxation. Such a fungible-goods argument may have some validity once the process of exportation has started and the exemption has attached to the goods. Then and only then, under the cases, does the question arise as

to the certainty of the goods completing the process and reaching the foreign destination as against the possibility of being diverted to the domestic market. See, *e. g., Joy Oil Co., supra; Empresa Siderurgica, supra.* However, the fungible-goods argument is not relevant to the question presented in the instant case.

The factual question of fungible or nonfungible goods plays no part in a determination of when the process of exportation begins, *i. e.,* when the exemption initially attaches. See *A. G. Spalding & Bros.* v. *Edwards* (1923), 262 U. S. 66.

The intent to export clearly is not sufficient to commence that process and change a machine stored awaiting shipment into an export. *E. g., Joy Oil Co., supra.* The certainty of export is not sufficient to convert property in a warehouse awaiting shipment to an export. *Empresa Siderurgica, supra* (cement plant parts crated awaiting shipment overseas held not exports and not immune from local taxes). The fact that the machines were made to order for a foreign market or that such machines have always been shipped overseas eventually does not make a product stored in a warehouse awaiting shipment an export exempt from taxation. *Cf. Coe* v. *Errol, supra; Hugo Neu Corp.* v. *County of Los Angeles* (1970), 7 Cal. App. 3d 21, 86 Cal. Reptr. 332.

If the above were true, the argument could be made with equal logic and force that all property stored in the factory awaiting manufacture of a machine, or certainly all property in process of manufacture into a machine, is exempt. No doubt the General Assembly could exempt such property from local taxes for local services, but it has not done so.

Argument is advanced by the appellant, in brief, that a change in the law extending the exemption from taxes would serve a useful purpose with regard to national monetary or trade policy. For this court to ground its decision upon such unexpressed reasons is contrary to the settled law that acts of the General Assembly are presumed to be constitutional unless clearly in violation of constitutional

provisions. R. C. 1.47 (A) ; *State, ex rel. Dickman, v. Defen-bacher* (1955), 164 Ohio St. 142, 128 N. E. 2d 59.

The machines in this case meet the requirement of goods destined for foreign commerce. They were ordered by a foreign customer. Once the process of exportation is commenced, a persuasive argument could be made that they are certain to be exported and, therefore, exempt.

However, at the time the tax was assessed the exemption had not attached to the articles as required by law because they were simply stored awaiting shipment—title and possession was in the appellant, payment had not been made, no export license issued, no letter of credit authorized, and the machines were in complete control of appellant; but, most important, there was no movement of goods, no shipment, no process of exportation. There is no certainty of export. The record establishes that some machines have remained stored in the warehouse awaiting shipment for three years. The orders could be cancelled, the export license might never issue, the financing may fail to materialize, the machines could be destroyed, dismantled or sold for scrap. These machines were no different from any other mass of goods in a warehouse awaiting shipment. They were not an export exempt from local taxes until they moved—in plain language, until they were shipped or at least moved to or into a means of transportation. *Empresa Siderurgica* v. *County of Merced, supra; Joy Oil Co., supra*.

The objection is made that this is a "mechanistic" concept. (See dissenting opinion in *Empresa Siderurgica, supra*.) I can not agree. The court has held that the exemption attaches to the articles or the goods. The time at which it attaches must be established. *A. G. Spalding & Bros.* v. *Edwards, supra*. The rule expressed by the majority fails to deal with this fundamental question. It leaves vague and unanswered the real question in the case which is: At what point did the machines become "exports" exempt under the Export-Import Clause?

P. Brown, J., concurs in the foregoing dissenting opinion.